————o————

## Ex Parte W. W. Jilz.

1. *Habeas corpus—Discharge of prisoner by circuit court—Re-arrest under same charge unlawful.*—Under the statute law of this State, where a prisoner is brought before the judge of a circuit court having authority to issue the writ, on petition for *habeas corpus*, and the judge acquires jurisdiction of the person and the subject matter, his discharge of the prisoner, whether the decision be erroneous or not, being in favor of personal liberty, is final and conclusive and not subject to appeal; and the prisoner cannot be again arrested and committed on the same charge. And the rule applies to circuit courts of St. Louis county in like manner as to other circuit courts.

2. *Habeas corpus—St. Louis Court of Criminal Correction—Sentence by, and appeal to St. Louis Court of Appeals—Jurisdiction of Supreme Court to grant writ.*—Where a prisoner under sentence in the St. Louis court of Criminal Correction is discharged on *habeas corpus*, and re-arrested for the same offense, the fact that an appeal from the original sentence is pending in the St. Louis Court of Appeals, and that from that tribunal no appeal will lie in such case to the Supreme Court, will not prevent the latter court under an application for *habeas corpus*, from discharging the prisoner from his re-arrest. In such proceeding, the Supreme court exercises not an appellate but an original jurisdiction conferred by the constitution.

Per Henry, J., concurring.

3. *Habeas corpus—Discharge—Re-arrest—Supreme Court, jurisdiction of—Res adjudicata.*—Where the prisoner having been once discharged by the lower court on writ of *habeas corpus* has been re-arrested for the same offense, and remanded to the same custody, the case is rendered *res adjudicata* by the first discharge. The Supreme Court has no appellate jurisdiction. And in case of such arrest, the Supreme Court may grant *habeas corpus*.

*, Petition for Habeas Corpus.*

*Chas. P. Johnson & H. B. Wilson,* for Respondent.

I. The sentence of Jilz by the Court of Criminal Correction was valid, because : 1st. It was in conformity with the general law of the State prescribing the punishment for criminal abortion. (Wagn. Stat., 450, § 34.) 2nd. The 32nd section of the Act of 1869 (Session Laws of 1869, p. 199), affixing a different and milder penalty for the same offense, when committed in St. Louis County, is unconstitutional and void. (Am. Law Times, N. S. Vol. 3, No. 9, 135 ; Dierkes vs. Janesville, 28 Wis. 465 ; Kelly vs. State, 6 Ohio S. 269 ; Wicker vs. Potter, 18 Id. 85 ; Bourland vs. Hildreth, 26 Cal. 162 ; Brooks vs. Hyde, 37 Id. 366 ; McAunich vs. Miss. & Mo. R. R. Co, 20 Iowa, 338 ; Rice vs. State, 3 Kan. 141 ; State vs. Parkinson, 5 Mo. 15.) And such a law is not the "Law of the Land." (Vanzant vs. Waddel, 2 Yerger, 270 ; Banks vs. Cooper, Id. 600 ; Wagn. Stat. 1087, § 8.)

II. The discharge of the prisoner upon *habeas corpus* by a judge of the circuit court was not *res adjudicata* and final. And the court of criminal correction had power to re-commit Jilz, notwithstanding such discharge.

Under this statute, (Wagn. Stat., 693, § 55) if a prisoner " shall have been discharged from a commitment on a criminal charge " he may afterwards be committed for the same offense, by the legal order of the court wherein he shall be bound by a recognizance or in which he shall be indicted or convicted for the same offense."

That this statute was intended to cover just such a case as the one at bar is clear ; and the authorities construing similar statutes fully recognize the power of the court having jurisdiction of the case to re-commit in such cases.

But the circuit court of St. Louis County had no jurisdiction of the case upon which Jilz was convicted. And it is a monstrous doctrine, that a court having no jurisdiction of the case, either by appeal or otherwise, may thus interfere, and prevent the sentence from being carried out.

In Yeats vs. The People, (6 John. 335)—cited by relator—the doctrine that a court of criminal jurisdiction has the power, in such cases, to re-commit for a criminal offense was fully recognized.

And in Yates vs. Lansing, (9 John. 395) it was held that " where a judge, in vacation, on *habeas corpus*, discharged a person committed by the chancellor on a conviction for a contempt and he was again re-committed for the same course, such recommitment was legal." And the court in this opinion, add among many other things in point, that the contrary view would in effect enable a court to " exercise the power of pardoning convicts." It is clear that if the doctrine insisted upon by relator is a sound one, then any judge of a county court in the State may discharge a person convicted of murder, and he could never be legally re-arrested or re-committed. (Hurd Hab. Corp., 557, *et seq.;* John vs. Yeats, 4 John. 318 ; Yates vs. Tanson, 5 John. 282 ; Yates vs. The People, *supra ;* Yates vs. Lansing, *supra.*)

III. The only remedy of relator is by writ of error or appeal. (*Ex parte* Toney, 11 Mo. 662 ; *Ex parte* Rathburn, 17 Id. 541 ; Davis vs. Lucky; 1 Watts. 66 ; Comm. vs. Hambright, 4 Serg. & Rawle, 149.)

IV. Inasmuch as the St. Louis Court of Appeals has exclusive appellate jurisdiction of the offense for which relator was convicted, we submit that the Supreme Court has no jurisdiction to discharge in this case. To hold that this court have jurisdiction will·tend to bring about an unnecessary conflict between the two courts.

It is admitted that relator has appealed his case to that court where it is now pending ; and that he did not apply for a *supersedeas* as he might have done.

Suppose the Court of Appeals should affirm the sentence, will this court assume to render such affirmance nugatory, by discharging the prisoner? This court has no jurisdiction of the case, and, if it does discharge, its action discharging the relator will be of no more binding force than that of the circuit court.

*C. C. Simmons, with R. S. McDonald,* for Petitioner.

The re-commitment of the petitioner on the same sentence, and for the same cause, after his discharge by Judge Lindley,was wholly illegal and inoperative. That judge was invested by law with the discretion and full power and authority to determine and adjudge whether prisoner should be remanded or set at liberty, and his decision and judgment, whether erroneous or correct, were irreversible. Even this court had no power to interfere on an appeal or writ of error. (Howe vs. The State, 9 Mo. 682.) The doctrine of *res adjudicata* applies to this case in all its force. The Court of Criminal Correction after that discharge had no power or authority whatever. The decision of Judge Lindley was as effectual as if it had been rendered by this court, and the judge of the Court of Criminal Correction has the same right to disregard and subvert the order of this court as he has that of Judge Lindley.

The position here taken is in strict accordance with long established and incontrovertible authority. (See Yates vs. People, 6 Johns. 337, in which the decision of the Supreme Court in the same case reported in 4 Johns. 317 was reversed ; also Cable vs. Cooper, 15 Johns. 152 ; Spalding vs. The People, 7 Hill N. Y., 301 ; Martin vs. State, 12 Mo. 470 ; Howe vs. State, 9 Mo. 682.)

NORTON, Judge, delivered the opinion of the court.

The petitioner on the 12th of August, 1876, was tried in the St. Louis court of criminal correction and was convicted of criminal abortion, and was sentenced by said court to imprisonment in the St. Louis county jail for the term of one year and to the payment of a fine of $500. Under said sentence he was committed to the jail of said county, and there remained until the 22d day of August, 1876, when he applied to James J. Lindley, a judge of the circuit court of St. Louis county for a writ of *habeas corpus*, which was by said judge issued, and on a hearing of the same, the said Jilz was discharged from his said imprisonment on the same day, on the ground that the court of criminal correction had exceeded its power in sentencing him, Jilz, to confinement in the county jail of St. Louis county for one year, and that the sen-

tence under it and the commitment were void.  After said Jilz was thus discharged, he was again on the 29th day of September, 1876, re-committed to the jail of St. Louis county on a re-issue of the same commitment upon which he was originally imprisoned, and from which he had been discharged by Judge Lindley.

Petitioner Jilz now seeks to be discharged from this last imprisonment on the following grounds:

1st.  Because the judgment and sentence of said court of criminal correction was void, in this, that under the law applicable to St. Louis county, said court only had jurisdiction to sentence him to an imprisonment for the period of six months in the city work house of the city of St. Louis :

2d.  Because having been once discharged on *habeas corpus* by Judge Lindley, who had power to hear and determine the legality of his imprisonment, his re-arrest and re-imprisonment on the re-issue of the same commitment were illegal and void. .

If the second reason assigned by petitioner for his discharge be well founded, it will dispense with a consideration of the first. Our attention will therefore be directed to it.

It is not denied but that Judge Lindley had the legal right to issue the writ of *habeas corpus* which was issued by him on the 26th day of August, 1876.  If the Circuit Judge had power to issue the writ—which is conceded—such judge acquired jurisdiction over the subject matter, when the office of the writ had been partially performed, in bringing before him the prisoner with the cause of his detention and imprisonment.

In the case of Martin vs. The State, ( 12 Mo. 474,) where one Jackson was imprisoned by virtue of an indictment found in the criminal court of St. Louis county, and not having been brought to trial at the end of the second term after the indictment was found, he was discharged on *habeas corpus* by a judge of the circuit court of St. Louis county from his imprisonment, Martin, the jailor, having him in custody, was ordered by the criminal court to retain Jackson in custody to answer the indictment, but disregarded the order of the criminal court and discharged Jackson in obedience to the order of the Circuit Judge.  Martin was fined for

14—VOL. LXIV.

contempt in disobeying the order of the criminal court, and appealed to this court from the judgment imposing the fine. In the disposition of the case it became necessary to consider the action of the Circuit Judge in discharging Martin, and Judge Ryland, speaking for the court, observed: "The St. Louis circuit court, and the judge thereof, in vacation, had the power to grant and issue the writ. This gives to such court or judge jurisdiction over the matter ; and though the statute expressly declares that 'no person imprisoned on an indictment found in any court of competent jurisdiction, or by virtue of any process or commitment to enforce such indictment, can be discharged under the provisions of this act, but may be let to bail if the offense be bailable, and if the offense be not bailable he shall be remanded forthwith,' yet this section does not take away the jurisdiction, but orders and directs what shall be done. A circuit judge, therefore, discharging. against this provision of the statute, may be considered as acting indiscreetly, even erroneously. Yet having jurisdiction over the subject, his order discharging must be considered a justification to the jailor in turning out the prisoner. *  *  *  * The circuit judge having authority to issue the writ of *habeas corpus* (and this point the attorney for the State in his brief admits, but contends that all the subsequent acts of the judge are not only against but beyond his jurisdiction and are utterly void), his act afterwards in discharging Jackson, the prisoner, although it may have been erroneous and contrary to law, yet it could not be said to be an act *coram non judice*."

So, also, in the case of *Ex parte* Page, (49 Mo. 291,) it was held by this court " that Page, who had been convicted of grand larceny and sentenced to the penitentiary for ten years, was entitled to his discharge on proceeding by *habeas corpus*, on the ground that the judgment of the court sentencing him to ten years was void, because the highest punishment under the law was seven years for such offense."

Judge Lindley, of the circuit court, having thus acquired jurisdiction of the person and subject matter, was authorized and required to determine the question as to the legality of the imprisonment, and whether he decided erroneously or not, is immaterial,

the discharge of the prisoner being in favor of personal liberty is final and conclusive. In proceedings by *habeas corpus* this court only exercises original jurisdiction, and in issuing the writ and determining the questions arising under it, possesses no more power than is possessed by a circuit or county court, or any judge or officer authorized by law to issue the writ and authorized to remand, admit to bail or discharge the prisoner, according to the circumstances of the case.

In the case of Howe vs. The State, (9 Mo. 690,) it was held that an appeal from a judgment of the circuit court, refusing to discharge a prisoner on *habeas corpus*, would not lie to this court.

In case of *Ex parte* Long, (11 Mo. 662,) it was also held that "in deciding on the propriety of discharging a prisoner on *habeas corpus*, this court exercises no appellate jurisdiction."

It would seem, therefore, that if a judgment of a circuit court refusing to discharge a prisoner, was conclusive, or not subject to be reviewed on appeal, a judgment of a court or judge discharging a prisoner, ought in like manner to be conclusive, especially when the statute expressly provides that "no person who has been discharged by the order of any court or magistrate upon a writ of *habeas corpus*, issued pursuant to this chapter, shall be again imprisoned, restrained, and kept in custody for the same cause," etc. (Gen. Stat. 629, § 55.)

The case, Yates, (4 Johns. 318,) is very analogous in some of its features to the case at bar, and the questions involved were most ably and thoroughly discussed. Yates was committed to jail by a court of chancery for contempt of court. He applied to Justice Spencer for a writ of *habeas corpus*, and was by him discharged. After he was discharged the court of chancery ordered his arrest and imprisonment on the same charge. He applied to Justice Spencer again for a writ of *habeas corpus*, and was again by him discharged. After this discharge he was again arrested and imprisoned on the order of the chancery court on the same charge. An application was subsequently made to the Supreme Court by Yates for a writ of *habeas corpus*, which was granted, and after a full hearing the prisoner was remanded to custody. He then sued out a writ of error, and the case was

heard by the court of errors, and is reported in 6 Johns. 337. The decision of the Supreme Court in 4 Johns, was reversed by the court of errors and the prisoners discharged.

Clinton, who delivered the opinion, concurred in by a majority of the court, considered the following points with others :

1st. Whether a judge in vacation had jurisdiction in the case?

2d. Whether a person discharged on a *habeas corpus* can be re imprisoned for the same offense :

In passing upon the two points he observes : "A judge is certainly constituted a tribunal to pronounce upon the legality of a commitment. He is not to intermeddle when the prisoner is a convict or in execution by legal process—when he is detained by legal processes—out of criminal courts for some matter or offense not bailable. If a prisoner is brought before a judge on *habeas corpus*, who is to determine on the legality of a commitment? Is he to take it for granted that every commitment of every court and magistrate for offenses not bailable is legal, and to remand the prisoner accordingly? Will not this render the *habeas corpus* act of little value, and circumscribe its operation in a most pernicious manner? The judge has jurisdiction, and, if he has jurisdiction, his judgment may be erroneous, but it cannot be void. If he decides that the process is illegal, he may err, and so may all courts, but erroneous judgments are not void but voidable. If, then, the judge had jurisdiction in the cause, whether he decided erroneously or not, is immaterial ; his discharge being in favor of personal liberty is final and conclusive. He is, in that respect, a court of *dernier* resort." He also observes in speaking of the provision of the statute of New York, similar to our own, "that no person who shall be set at large upon any *habeas corpus*, shall again be imprisoned for the same offense, unless by the legal order or process of the court wherein he is bound by recognizance to appear, or other court having jurisdiction of the cause.

This provision appears to set this branch of the inquiry at rest. It is the same as in the English statute, and evidently refers, when speaking of the court where the prisoner is bound to appear or a court having jurisdiction of the cause, to the case of persons

bound to appear and answer for crimes in criminal courts.  If the right of the imprisonment is sustained in other cases, the benefits of the writ of *habeas corpus* may be greatly evaded if not completely nullified.  I consider it, therefore, of great importance to personal liberty to resist this extraordinary doctrine. Abuses may indeed occur in the exercise of the powers of a judge under the *habeas corpus* act, but if he errs in favor of personal liberty he errs on the safe side, and his decision ought not to be called in question.  That any re-commitment in this case is illegal, I think cannot be doubted.  The prisoner was discharged from custody, and the judgment of the Supreme Court remanding him to imprisonment was reversed by the court of errors.

The conclusion arrived at in the case of Yates, was reached after a most thorough and searching investigation by some of the ablest and most learned judges of that day, and commends itself to our favorable consideration as being in consonance with the justice of the case and sound logic.  In the light, therefore, of the cases above cited, as well as the provisions of our statute regulating proceedings of this character, and expressly prohibiting the re-arrest and re-commitment of a prisoner after being discharged by a court or officer having jurisdiction of the person and authority to act in regard to the subject matter, the re-arrest and re-commitment of Jilz by the St. Louis court of criminal correction was unauthorized, and his imprisonment thereunder illegal.  It is no argument against this conclusion to say that a judge or officer authorized to issue this writ of right may commit a mistake and release from confinement a citizen who ought not to be released. Under any system of jurisprudence, no matter how perfect and complete it may be, mistakes will sometimes be made and errors committed.  Questions of law or fact, whether the determination of them be confided to the court or jury, owing to the imperfections incident to all human reasoning, are often improperly and erroneously determined, yet when they are determined by those who are by law entrusted with their determination, that is an end of the matter.  If, even, as in this case, a person convicted of a misdemeanor, brutal in its character, and which shocks the moral sense of the whole community, should be entitled to his discharge

by reason of any error committed, it is better that it should be so than that a principle should be recognized or a rule laid down which would practically render the writ of *habeas corpus* a nullity, and bring into constant danger and peril the liberty of the citizen. We deem it unnecessary, for the purpose of this case, to enter into a consideration of the question whether the act requiring the St. Louis court of criminal correction to sentence persons, who are convicted of misdemeanors in St. Louis county, to the work house of the city of St. Louis for the period of six months, is or is not obnoxious to the constitution, on the ground of its being a partial or local and not a general law. Upon this point we express no opinion, nor is it necessary to do so.

It is argued that inasmuch as Jilz, on the 19th day of August, 1876, took his appeal to the St. Louis court of appeals from the judgment of the St. Louis court of criminal correction, the constitution, in providing that no appeal in such cases from the judgment which the St. Louis court of appeals might render should be allowed, deprives this court of its original jurisdiction to issue writs of *habeas corpus*, and to hear and determine the same.

If, in issuing writs of *habeas corpus*, and in determining the questions arising thereunder, this court could exercise appellate jurisdiction, there might be some ground for the proposition contended for. It has, however, been expressly decided in the cases herein cited, that in a proceeding of this character this court cannot exercise any appellate jurisdiction whatever. It therefore necessarily follows that the prohibition of an appeal from any decision which might be rendered by the St. Louis court of appeals does not prohibit this court from the exercise of a jurisdiction bestowed by the constitution in the exercise of which (as in *habeas corpus*) it does not act as an appellate court. For the reasons expressed herein, we think the prisoner is entitled to a discharge from the imprisonment of which he complains, and with the concurrence of the other judges will be so ordered.

Per HENRY, J., concurring.

I fully and heartily concur in the foregoing able opinion, and hold that the judgment of Judge Lindley, discharging Jilz from the custody of the jailor, was final and conclusive, and that neither the court of criminal correction, nor any other court in the State could re-commit him on the original sentence.

The position of the counsel for the State, and the ground necessarily taken by any one holding that the action of the court of criminal correction was proper, is that, although the statute authorized Judge Lindley to issue the writ, and when Jilz was brought before him he acquired jurisdiction of his person and of the cause, yet he had no jurisdiction to discharge him, unless he should decide properly the legal questions involved. In other words, if the sentence pronounced by the court of criminal correction was right, Judge Lindley had jurisdiction to re-commit, but none to discharge Jilz, and Judge Cady had the right, and it became his duty, to disregard the order of discharge and re-commit him.

In the matter of DaCosta (Park. Crim. Cas. 129) it was held by the Supreme Court of New York, that "the principle of *res adjudicata* is applicable to proceedings upon *habeas corpus*." That was a case in which the petitioners had been remanded to the custody of the person who held them, but the principle of that is none the less applicable to this case. Our statute gives the prisoner this writ as often as he may find a court or officer superior to the one to whom he last made his application, authorized to issue it. In his petition he is required to state, "that no application for the relief sought has been made to or refused by any court, officer or officers, superior to the one to whom the petition is presented."

In the case of DaCosta, *supra*, the observation of Senator Paige is quoted and approved, that, "if a final adjudication upon a *habeas corpus* is not to be deemed *res adjudicata* the consequence will be lamentable. This favored writ will become an engine of oppression instead of a writ of liberty."

In the same case (Mercien vs. People, *ex rel* Barney, 25 Wend. 64) the chancellor delivering the opinion also held that, "the principle of *res adjudicata* was applicable to a proceeding upon *habeas corpus.*"

Neither the court of appeals nor the Supreme court exercises appellate jurisdiction when it issues this writ, and its judgment, in this proceeding, is of no more force or validity than that of a justice of the county court, or a circuit judge.

In *Ex parte* Toney (11 Mo. 662) Judge Napton observed that, "in deciding on the propriety of discharging a prisoner on *habeas corpus*, this court exercises no appellate jurisdiction. In the exercise of this power it is confined within the same limits which would restrain a judge of the circuit or county court in its exercise. It can give no other or greater relief than is afforded by these officers. If the idea of all appellate jurisdiction is discarded, it will be obvious that neither this court, nor any other court nor officer, can investigate the legality of a judgment of a court of competent jurisdiction by a writ of *habeas corpus*. If the court has jurisdiction of the subject matter and of the person, although its proceedings may be irregular or erroneous, yet they cannot be set aside in this proceeding. The party must resort to his writ of error, or other direct remedy, to reverse or set aside the judgment, for in all collateral proceedings it will be held to be conclusive."

The court held in that case that Toney was not entitled to his discharge, and remanded him to the custody of the warden of the penitentiary ; but suppose it had determined otherwise, was there any authority in the court, in which Toney was convicted and sentenced, to re-commit him, in defiance of the mandate of this court, whether it erred or not? Could the inferior court have reviewed and reversed the judgment of this court? When the court says : "Although its proceedings (proceedings of the court in which the conviction was had) may be irregular or erroneous, yet they cannot be set aside in this proceeding," it was not passing upon the effect of a judgment upon a *habeas corpus* discharging the prisoner, but announcing a rule by which courts, or

officers issuing the writ, should be guided in determining what judgment to render.

If the doctrine of the Toney case be correct, and we fully indorse it, the court of criminal correction, if Jilz had sued out his writ in this court instead of the circuit court, and been discharged, could have re-committed him, and repeated the commitment as often as any court should, on *habeas corpus*, order his discharge, unless such order regularly issued were a finality. If we now discharge Jilz, what is to hinder the court of criminal correction from re-committing him, if the doctrine contended for be the law? And if this be the law, of what value is the writ of *habeas corpus*? The judge of the court, acting in a judicial capacity, would not be liable to the penalty prescribed by the statute, and if he were, what is the penalty, a hundred times recovered, in comparison of the personal liberty of a citizen?

But, it may be said, a county court justice may issue the writ and discharge one convicted of a felony, and sentenced to the penitentiary, by a circuit court. If this be so, the mistake was in authorizing such inferior courts to issue this writ, but far better were it that nine hundred and ninety-nine of every thousand guilty men should escape under this process, than that a writ, which in the past has accomplished so much for personal liberty, should be rendered inefficacious by judicial construction or legislative enactment.

It is the most celebrated writ known to our law, and has received such encomiums as have been pronounced upon no other judicial process belonging to ours or any other system of jurisprudence. Its origin is so far back in antiquity that its date cannot now be ascertained. It is older than *Magna Charta*, and for centuries has been held by Englishmen as the bulwark of their liberty, and is so highly esteemed by the people of the United States that it has been embalmed in the Federal Constitution, and in the Constitution of every State in the Union; and yet if the position of the counsel for the State be correct, it is of less value than a writ of replevin, or a *fieri facias;* for these do what they are designed to accomplish, while an inferior court can set at naught the judgment of the highest judicial tribunal of the

land discharging one restrained of his liberty, and the victim of judicial oppression has no remedy but to resort again to his *habeas corpus*, again to be committed if such inferior court shall deem, or feign to believe, the judgment discharging him erroneous. With what propriety could it be denominated "the great writ of liberty," if this be the law? When, then, would a citizen illegally restrained of his liberty, get his final discharge on a *habeas corpus?*

This is no time to impair the efficacy of this writ. Now, more than ever before, should we be careful to preserve the "this dearest birthright of Britons," as, more than a century ago, it was characterized by the English colonists in America. No prison walls should be strong enough, against its mandate, to hold one for whom it issues, nor any judge or court too great to bow in submission to the judgment rendered in the proceeding by a tribunal authorized to issue the writ of *habeas corpus.*

I think that the prisoner is entitled to his discharge.