GEORGE M. BARNARD *vs.* JOHN L. COFFIN & another.

Suffolk. March 14. — Oct. 27, 1884. DEVENS & COLBURN, JJ., absent.
HOLMES, J., did not sit.

In an action against a firm of real estate brokers for negligence in selling a parcel of land belonging to the plaintiff, there was evidence that the land was situated in a State in which neither the plaintiff nor the defendants resided or had a place of business; that the plaintiff employed the defendants to obtain offers for the land; that the defendants employed one O. to obtain an offer; that he reported an offer, which was in fact made in his own behalf, and which was less than the market value of the land, which offer was reported to the plaintiff and accepted by him, and the land conveyed; that one of the defendants at the time of sending the order to the plaintiff, who did not know the value of the land, advised him that the sale was a good one, and the plaintiff relied to some extent on this advice; that the defendants did not in fact know the value, except as they were informed by O., who represented the value to be what was offered; that they did not communicate their want of knowledge to the plaintiff; and that the plaintiff directed one of the defendants to telegraph to his partner to accept the offer "if a good sale." *Held*, that, if the acceptance by the plaintiff was on the condition that the defendants thought it was a good sale, they were not liable if their opinion was honestly formed and no misrepresentation of fact was made; that if the acceptance was conditional on the sale being a good one, and the defendants were informed that the plaintiff relied upon them to decide upon that, they were bound to exercise reasonable care in determining that fact.

CONTRACT, with counts in tort. The fourth count, which was in tort, was as follows: "And the plaintiff says that he employed the defendants to sell a certain parcel of land, to wit, one hundred and sixty acres of land situated in Rock Island county, in the State of Illinois, and the defendants became and were bound to use due care in and about the sale thereof, and the defendants did not use due care in and about the sale thereof; but, by reason of the wrongful and negligent performance of their duty in the premises, the plaintiff suffered great loss and damage."

Trial in the Superior Court, without a jury, before *Staples*, J., who allowed a bill of exceptions, the material parts of which were in substance as follows:

The plaintiff testified that he had employed the defendants to sell land for him in Iowa before the transaction in question; that he asked the defendant Coffin to sell this land, which was situated in Illinois, and Coffin agreed to do it; that the witness

requested Coffin to "report to me any offers you may have;" that he had no other conversation with Coffin until he received the following letter, addressed to himself, and signed "Coffin & Henry": "Dear Sir, Telegram received from our Davenport office, as follows: 'Offered ten dollars cash for Barnard's quarter Rock Island county. Answer immediately.' Which we take it refers to your 160 acres rough farming land, held formerly as coal land. We think it a fair price, or our Mr. Henry would not have submitted it. Please advise us as early as practicable."

The plaintiff further testified: "I said to Coffin, after receiving his letter, 'It is a low price.' He said, 'It is a good sale.' I told him to telegraph, 'I will accept offer if a good sale, and no coal on it.' On June 19, 1882, I received the following letter: 'Boston, June 19, 1882. George M. Barnard, Esq.: Dear Sir, In reply to our telegram of 14th inst., authorizing the sale of your 160 acres in Rock Island county, Ill., at ten dollars conditionally that they were satisfied there was no coal, our Mr. Henry writes, under date of 14th June inst., as follows, viz.: "The purchaser wants the land for pasture only; no coal on it sufficient to pay for working. The sale was made by Louis Ochs, who says this is a very rough tract, covered with brush, and well sold at $10 per acre. If we had not accepted to-day he would have bought another tract." Louis Ochs is a German, living in Davenport, whom we have employed for the past twenty-two years in selling lands, and in whom we have great confidence. We enclose a warranty deed, dated 14th June, 1882, to Isaac Fleishman, for the southeast ¼ of section 35, Tp. 17, Range 1, west of the 4th principal meridian (?), consideration $1600; terms cash. Is the description correct? Yours truly, Coffin & Henry.' In a letter from Osborn & Curtis, from Illinois, I subsequently heard of irregularities respecting the sale, and notified the defendants that I should hold them responsible. When $10 an acre was offered, I did not hold it under consideration; I relied on their statement. Coffin did not mention to me the employment of Ochs, and I never heard of Ochs before the letter to me of June 19, in which his name appears."

W. E. Jenkins testified for the plaintiff as follows: "I have been clerk for the plaintiff thirty years. I had an interview

with Coffin, on July 24, 1882, at the request of the plaintiff, at Coffin's office. We had then received a communication from Osborn & Curtis. We had heard nothing of an investigation by Coffin, and a good deal of time had elapsed. I asked him if he had heard from his partner in regard to the sale. He said, ' Yes, a number of communications.' I expressed surprise that he had not communicated the fact to Mr. Barnard. He said, as Barnard had said he should hold them responsible, he was absolved from doing more. This was twelve days after the first letter. I asked Coffin what the result of his investigation was. He said Curtis's letter was correct; that the land had been sold for $3640, and the deeds had been recorded at the same time by the same party. He further said that Ochs was sent out by them to examine the land; that he went out and bargained, or virtually bargained, with Haupt to sell him the land for $3640; that Ochs represented to the people in the vicinity of the land that the land had got to be sold, and that he then came back to Henry and represented to him that the land was well sold at $10 an acre. He also said, all we get out of it is $40 : for we have to divide with this Ochs. He further said Ochs was a scoundrel, and Barnard ought to prosecute him and make him disgorge."

On cross-examination, the witness testified : " Coffin did not state that at the time of the sale he knew that any greater price than $10 an acre was obtained."

The plaintiff also put in evidence the deposition of Peter Haupt, who testified that, on June 15, 1882, he agreed with Louis Ochs to buy the land in question for $3640, and took a deed of it on June 24, 1882, from Isaac Fleishman ; that he owned adjoining land, and considered what he paid to be the fair value of the land. Annexed to the deposition was a copy of the deed from Fleishman to Haupt, which named $3600 as the consideration.

The plaintiff also put in evidence the deposition of the defendant Henry, which was taken on behalf of the defendants. This witness testified that, on receipt of a letter from Coffin, he inquired of Ochs whether he could find a customer for the land ; that on June 10, 1882, Ochs reported an offer of $10 an acre for the land, and the witness sent a telegram to Coffin on

the same day; that he received from Coffin a telegram, dated June 14, 1882, as follows: "If selling as farming land, Barnard will accept offer ten dollars, but not if any coal value;" that, on June 14, he sent a letter signed by him to Coffin, as follows: "Your telegram this date received, saying, 'Barnard will sell for $10 as farming land, but not if any coal value.' The purchaser wants the land, for pasture only, — no coal on the land sufficient to pay for working; sale made by Louis Ochs, who has a whole section cornering on this for sale at $20, the land being improved and with two houses on it. Make deed for Barnard's quarter to Isaac Fleishman of this city, who is lending the purchaser some of the money to buy with. Louis Ochs says, this is a very rough tract, covered with brush, and well sold at $10 per acre. Purchaser was in a hurry, hence telegraphed. If we had not accepted to-day he would have bought another tract."

The witness further testified that he had no acquaintance with the value of Illinois lands; that the offer of $10 an acre was the only offer he had for it, and he believed it was a fair price for it; that he paid no commission to Ochs; that this sale of the plaintiff's land was the only transaction he ever had with Ochs; and that the plaintiff's land was about fifteen miles from the office of the witness.

The defendants put in the following testimony:

The defendant Coffin testified that he and the defendant Henry were partners at Davenport, Iowa, their business being that of general land agents; that the witness had had his office in Boston for twelve years; that the plaintiff had asked him several times to find a customer for his Rock Island land; that the witness told the plaintiff it was out of the defendants' line; that they did not know about Illinois lands. "On March 14, he asked me to get him a bid for them; I never accepted a bid for him or any one; I understood that we were to report bids to him; I told him we would try and get him a bid; I thought if any one could get a bid, Ochs could; I wrote to Henry, and asked him if he could not get a bid through Louis Ochs. On June 13, I received a telegram from Davenport and sent to Barnard a note; Barnard came in, and said, if the land was sold as farming land, accept it. I so telegraphed to Henry, and it was all done. We paid

over to Barnard $1600, less commissions, $80, and exchange, $3.80. No commission was paid by me to Ochs, and our books show none was paid. The first I knew that the land was sold for more than $1600 was the letter shown me from Curtis & Osborn. Barnard called, and said there was some fraud in it. I wrote to Henry."

On cross-examination, the witness testified: " Barnard told me the two deeds were recorded at or about the same time. I was willing to get a bid for this land, because it was so near. I had declined as to other lots. This land was near the railroad, in a coal valley. We had employed Louis Ochs's firm in Davenport many years. I wrote to Henry about the charge of fraud. I did not communicate with Barnard because he had made such charges."

Patrick H. Dillon testified: " I have been ten years clerk to the defendants. On March 14, Barnard came in. He and Mr. Coffin were settling sales of Iowa lands. Barnard asked Coffin if he could get him an offer for the Rock Island lands. Coffin said, a man in Davenport, named Ochs, might obtain an offer, and he would write to Henry and see what could be done. Then, after the ten dollars an acre telegram, Barnard said he would sell if the land was sold as farming land. After the telegram was sent, we received on June 19th a letter from Henry. I keep the books kept in Boston office. No commission paid to Ochs is on books."

On cross-examination, he testified: " Mr. Coffin did not remember telling Barnard about Ochs. I never thought of it till now. I never mentioned it before, either to counsel or to Mr. Coffin. I recalled what was said about Ochs this morning the first time."

Upon the foregoing evidence, the judge found and ordered judgment for the plaintiff on the fourth count. The judge found as a fact, that the offer submitted was never in fact made, unless by Ochs himself on his own account; that the defendants were bound to see to it that the offer transmitted was a genuine offer, and that it was not an offer of the sub-agent; that the defendants were negligent in respect to the report of the offer, and in not properly informing themselves and acquainting the plaintiff in respect to the value of the

land; also in advising the acceptance of the offer submitted; also in respect to the supervision of the doings of Ochs; and in respect to the alleged sale and deed to Fleishman and the sale and deed to Haupt, so far as the interest of their principal was involved.

The judge also found that, in respect to the delegation of authority to the sub-agent, there was no usage or custom shown sanctioning such a delegation, and that no express or implied consent or agreement of or by the plaintiff was given or entered into that the sub-agent should be employed; and ruled that, in the absence of such custom or usage, or of such consent or agreement, the authority of the agent could not be delegated so as to create a privity between the plaintiff and such sub-agent.

The defendants alleged exceptions.

*W. Gaston & B. R. Curtis*, for the defendants.

*G. O. Shattuck*, for the plaintiff, cited *Cockran* v. *Irlam*, 2 M. & S. 301, note; *Mackersy* v. *Ramsays*, 9 Cl. & F. 818, 845; *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 177; *Warren Bank* v. *Suffolk Bank*, 10 Cush. 582; *Darling* v. *Stanwood*, 14 Allen, 504; Story on Agency (7th ed.) § 217 a; 1 Add. Cont. (8th ed.) 468.

FIELD, J. If the plaintiff merely employed the defendants to get offers and report them to him, and he on his own judgment accepted an offer they reported, it is difficult to see how the defendants can be held responsible for the fraudulent conduct of Ochs, unless they participated in it.

If Ochs was the agent of the defendants and they are responsible for his acts under the rule of *respondeat superior*, the cause of action is the malfeasance of Ochs, for which the defendants are responsible, independently of any negligence on their part.

If the plaintiff acted wholly on his own judgment in accepting the offer, and the defendants made no recommendation on which the plaintiff relied, any negligence of theirs in not getting the best offers becomes immaterial, provided they were only employed to get offers and they reported all the offers they received. If Ochs was not the agent of the defendants in any such sense that they are responsible for his acts, then the defendants, if liable at all, must be liable on the ground of

negligence in employing such a man as Ochs was, or in receiving and reporting such an offer as he made, and then in advising the plaintiff to make the sale on the terms of this offer, or, if it was left to them to determine, in making the sale themselves, without having taken any reasonable care in ascertaining the market value of the land.

The finding of the court for the plaintiff is put wholly on the ground that the defendants were negligent " in and about the sale." The defendant Henry testified that he had no knowledge of the market value of Illinois lands, and it does not appear that Coffin had any. Henry's information seems to have been derived wholly from Ochs, and he did not write to his partner Coffin that he had any other knowledge of the land or of its value. The plaintiff testified that Coffin said, " It is a good sale," and in Coffin's first letter to the plaintiff he says, "We think it is a fair price, or our Mr. Henry would not have submitted it." The plaintiff testified that he told Coffin to telegraph to Henry, " I will accept offer if a good sale and no coal on it." The telegram sent was, " If selling as farming land Barnard will accept ten dollars, but not if any coal value." It does not appear that the land was valuable for coal. The telegraph omits the condition that it must be a good sale. Before the plaintiff signed the deed, he received the defendant's letter of June 19th. That omitted some clauses contained in the letter of Henry to Coffin, but we do not see that the omissions are important on the question of negligence.

If we assume that the court, on the evidence recited, could properly find that the defendants advised that the sale was a good one on the terms reported; that the plaintiff relied on them to some extent, and did not himself know the market value of the land; that the defendants had not sufficient knowledge of the value of the land to justify them in giving the advice; that they did not inform the plaintiff that they knew nothing of the value of the land except what Ochs had told them; and that the acceptance of the offer by the plaintiff was on the condition that the defendants thought it a good sale; and that the defendants honestly thought it a good sale, but neglected to make such inquiries as they ought to have made in order to justify them in advising the plaintiff that it was a

good sale, what is the law applicable to such a state of facts? For giving an opinion that it was a good sale, if it was an honest opinion, the defendants are not responsible in damages unless they also made some misrepresentation of facts. They were originally employed to get offers, and were not employed to make the sale according to their discretion. If they gave advice about it, whether asked or not, and it was honest advice, they are not liable, although they did not know enough about the matter reasonably to give advice, unless they made some misrepresentation of the kind and extent of their knowledge, or of some other material fact. If, however, the final authority given by the plaintiff was that the defendants might accept the offer only on the condition that it was a good sale, and the defendants were informed that the plaintiff relied upon them to decide upon that, and the defendants accepted this responsibility, we think they were bound to exercise reasonable care in determining this, and that there was evidence that they did not exercise reasonable care in this respect. Whether the court below found, as a fact, that this was the final authority given, we do not know. There is no evidence that Henry had any knowledge of any such condition; but if this was the authority given to and accepted by Coffin, the defendants cannot escape responsibility because Coffin neglected to communicate this condition to Henry. In the letter to the plaintiff of June 19, the authority to sell is substantially recited, and the only condition there attached is that the defendants must be satisfied that there was no coal, and it does not appear that the plaintiff ever objected to this statement of the authority he gave. A slight difference in the language used in the conversation between the plaintiff and Coffin would change the legal effect. If Coffin said, "I think it is a good sale," and Barnard said, "If you think it is a good sale I will accept the offer, provided there is no coal on the land," that would not be enough. The language, whatever it was, must have been such that Coffin as a reasonable man must have understood that the plaintiff placed on the defendants the responsibility of determining whether it was a good sale, and Coffin must have accepted this responsibility.

Under the authority originally given to the defendants to report offers, they asked Ochs to find a customer, and Ochs

reported to them an offer. The court found that this offer was never made unless by Ochs on his own account; and then ruled that "the defendants were bound to see to it that the offer transmitted was a genuine offer, and not an offer of the sub-agent," by which was meant Ochs. It is not found that the defendants knew that the offer was by Ochs on his own account. The offer was a genuine one in that it was actually made, accepted, and performed. This is a ruling of law, and we do not think that there is any such rule of law where the principal is not responsible for the acts of the agent, and we infer that the court below was of opinion that the defendants were not responsible for the fraudulent acts of Ochs, although the ruling as applied to the evidence perhaps amounts to a ruling that they were. *Exceptions sustained.*