EMILY L. HARLOW *vs.* WILBERT S. BARTLETT & another.

Suffolk.   November 18, 1897. — April 5, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Agency — Breach of Trust — Negligence — Res Adjudicata.*

Where a bill in equity alleges that the defendant, purporting to act as agent of the plaintiff in the sale of certain property and in relation to certain transactions relating thereto, conspired by means of false and fraudulent representations and dealings to defraud the plaintiff, and did defraud him, out of his property and the proceeds thereof, of which it was alleged that the defendant and certain persons who were his instruments had possession, and which in equity and good conscience they held as trustees for the plaintiff, and prays for a transfer and assignment of the property to the plaintiff, a decree dismissing the bill will not bar a subsequent action of contract between the same parties, in which the declaration alleges that the plaintiff employed the defendant to sell certain property, being the same referred to in the bill in equity ; that he negotiated a sale which the plaintiff, relying upon him, carried out, receiving as security for payment of the purchase price thereof a mortgage on certain land ; that the purchaser was irresponsible and the security worthless, and that the defendant failed to exercise proper care and diligence in protecting the plaintiff's interests as his agent ; for, although it may have been found in the suit in equity that the defendant was not guilty of fraud and conspiracy, that would have no tendency to show that he might not be guilty of negligence in looking after the plaintiff's interests as his agent.

At the trial of an action of contract brought by a principal against his agent to recover damages for negligence in the sale of certain personal property of the principal, evidence that the plaintiff relied on the defendant in regard to the sale and the sufficiency of the security taken, and that the defendant accepted the responsibility, is sufficient to warrant the judge in submitting to the jury the question of the negligence of the defendant in taking as security for the payment of the purchase price a second mortgage on certain land, the first mortgage being for nearly its full value, in taking no security on the property sold, and in stating to the plaintiff that he was perfectly secure when in fact the mortgage was worthless, and the purchaser shortly after the sale became insolvent.

CONTRACT OR TORT, for negligence in the sale of certain articles of personal property.   Writ dated September 21, 1895.

The first count of the declaration alleged that, in February or March, 1892, the defendants, as copartners, were real estate agents and brokers in Boston, and were then employed as such by the plaintiff to sell certain furniture belonging to her; that they, acting as her agents, notified her that one Patten would purchase the property for $1,200, and she informed them that

she would accept the offer; whereby they became bound to exercise due care, and to exercise their best ability, skill, and experience in completing the sale and protecting the plaintiff's interests; that she, believing them to be exercising care, ability, and skill and relying thereon, at their request sold the furniture to Patten for the aforesaid sum, receiving as security a mortgage of certain land in Revere, signed by one McNamara as grantor; that Patten was irresponsible and unable to pay his debts, and the mortgage was nearly worthless because the land subject to it was then subject to an earlier mortgage amounting to nearly its whole value; and that these facts were known or might have been known to the defendants had they exercised proper care and diligence.

The second count, after stating the offer of Patten made to the plaintiff through the defendants as her agents, alleged that the plaintiff, believing that the offer was a cash offer, notified the defendants that she would accept it; that the defendants, to induce her to sell the furniture to Patten on credit, fraudulently represented that he was the owner of a house and land in Revere; that he had spent all his ready money in constructing said house, and that he would give her a mortgage thereon which would be ample security for the payment of the purchase money, although the land was subject to a small first mortgage; that the plaintiff, believing the representations were true, was thereby induced to sell her furniture to Patten, receiving as security for the price thereof a mortgage on land in Revere signed by one McNamara; that the mortgage was not ample security for the payment of the price, because the land was subject to a prior mortgage amounting to nearly its whole value; that thereafter the plaintiff borrowed $300 from the defendants, whereupon the defendant Bartlett offered her a paper which he falsely represented was a receipt for the money loaned; and that the plaintiff, relying on said representations and believing that said paper was a receipt, entirely surrendered her judgment to the defendant Bartlett, and signed the paper, which was not a receipt, as the defendants well knew, but was an assignment of the mortgage to Bartlett. The declaration further contained a statement that both counts were for the same cause of action.

Answer: 1. a general denial; 2. that in September, 1892, the

plaintiff filed a bill in equity in the Supreme Judicial Court for the county of Suffolk, in which the same facts alleged in the two counts of the declaration were set forth and pleaded; that thereafter the bill was dismissed; and that by the decree in that suit, all of the matters contained in the bill being the same as those contained in the declaration in the case at bar, were fully adjudicated and decided.

Trial in the Superior Court, before *Lilley*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that, in 1892, she conducted a lodging house on Washington Street in Boston, and owned the furniture therein; that, having advertised to sell the furniture, one of the defendants, Everett, called on her on February 12, 1892, looked over the furniture, and asked her what she valued it at, to which she replied that it cost about $1,700, but that she would leave it to him to do the best he could for her for cash, as she was compelled to sell; that about a month later one Patten, accompanied by one McNamara, came to look the house over, and two or three days later he was there with the defendant Bartlett, who did all the business; that he said Patten had concluded to take the house and would pay $1,200, and the plaintiff said she would accept it; that Bartlett then said, " There are conditions; he cannot pay you all cash now, for he has built him a fine house down at the beach, and in finishing it up he has put a small mortgage on it, but he is in business; he took all he could afford to from his business, and had to put on a very small first mortgage "; and in answer to the plaintiff's question whether it was anything that would interfere with her security he replied, " Not at all, she was perfectly secure "; that in reply to her statement that she must have some money for rent he replied, " I will pay the rent and let you have $100 "; that he further said that he would collect the money when due and forward it to her; that he knew the mortgaged property well, and had sold houses of the same character and could sell that one for $3,800; that he said it was Patten's property, and said nothing about McNamara; and that, in answer to the plaintiff's question whether Patten was a responsible and reliable man, he said, " Yes, perfectly so."

The plaintiff also testified that she did not inquire about Patten, or look at the land, for her business was with Bartlett,

from whom she derived all her knowledge of the property; that she signed two or three papers in the presence of Bartlett, Patten, and a Mrs. Hall. Subject to the exception of the defendant, the plaintiff was asked, " Whether or not in making this trade or performing the transactions which were performed you relied at all upon the skill and judgment of Mr. Bartlett with regard to the value of the real estate and the mortgage in Revere?" To this question she replied, " Entirely; I relied entirely on him."

The plaintiff further testified that in June, 1892, she called on Bartlett at his office to know why the agreement was not kept, and was told that Patten had sickness in his family and had failed in business, and that McNamara was insane, but that her security was perfectly good, and that in a few days Bartlett would foreclose and settle all bills; that late in August, not having heard from him meanwhile, she saw him again, when he told her that he had taken a deed of the property which was perfectly secure; that he had a prospect of selling it at private sale, which would avoid a sacrifice; and that after her last conversation with him she brought a suit in equity in this court against him, the other defendant, Everett, and one Llewellyn H. Bartlett.

The bill alleged in substance that the defendants in the case at bar, purporting to act as agents of the plaintiff in regard to the sale of certain property, and in regard to certain transactions relating thereto, described in the bill, conspired together by means of false and fraudulent representations and dealings in regard to those transactions to defraud her, and did defraud her, out of her property and the proceeds thereof, of which it was alleged that they and Patten, McNamara, and Llewellyn H. Bartlett, who were their instruments, had possession, and which in equity and good conscience they held as trustees for the plaintiff. The prayer of the bill was that they should be compelled to transfer and assign the property to the plaintiff.

After a hearing in this court, the bill was dismissed, on December 29, 1893.

The plaintiff further testified that, at the hearing on her bill in equity, she gave substantially the same evidence as at the trial of the present action, and that the present defendants, Patten and McNamara, and one Watson, who examined the

property for her in Revere, also testified at the same hearing; that she then testified that she signed the assignment of the mortgage, which she could have read, although she did not so do; that the paper was doubled over, but there was no attempt at concealing the contents; that when the mortgage was brought to her by Bartlett, she asked why it was for $1,200, and not for $900, and he replied, " Sign this receipt for $300, and it is all the same," and she signed it, as well as a bill of sale of her property, which she delivered to Patten, and from him received the McNamara mortgage and the note for $1,200; that she then testified that she had inquired as to the responsibility of Patten, and whether the first mortgage would interfere with her security, how the mortgage came to be given by McNamara and who he was, but did not ask whether he was worth anything; that she also testified at that trial that she understood that Patten could not pay her $1,200 in cash, but was to give her a second mortgage, and that the first mortgage was small; that she did not know where the $300 came from as to which Bartlett said, " I will get you $300, of which $100 will be for you and $200 for rent, if that will last you "; and that she knew the mortgage was given by McNamara, but supposed that he was a copartner of Patten.

One Watson, a real estate broker, testified for the plaintiff that the value of the McNamara property in Revere was about $2,300.

The defendant Bartlett testified that at the time of the transaction with the plaintiff a part of his business was the buying and selling of lodging houses; that he supposed Patten to be doing a fair and comfortable business, but did not know how much he was worth, although, so far as he knew, Patten's financial standing was good, and he had a good business reputation as an honest man; that McNamara was in some kind of business in a store outside of Boston, and subsequently became insane; that Patten took possession of the plaintiff's house, and after a short time sold the furniture to one Florentine for $1,000; that in August, 1892, McNamara, at the request of the witness, transferred his equity in the real estate at Revere to the witness's brother, Llewellyn H. Bartlett, a travelling salesman, who had previously bought mortgages on lodging houses.

On cross-examination he testified that he gave evidence at

the hearing on the bill in equity; that at that hearing he was asked as to his agency for the plaintiff, as to what he was to sell to her and what he had sold for, as to Patten and his financial standing, as to the purchase of property for $1,200, as to the signing of the papers and the transactions at his office regarding the same, as to the collateral note and the raising of $300, as to the length of time he had been familiar with the property at Revere, as to his belief as to its value, as to the condition of the property and its title, as to the assignment of the mortgage, as to the first mortgage and the amount thereof, as to his conversation with the plaintiff regarding it, as to whether Patten was at that time the owner of any property in Revere, as to the conversation in which he stated that Patten had spent all his ready money in constructing a house, and as to the conversation in which he was alleged to have stated that there was only a small first mortgage which amounted to nothing on the house.

Bartlett further testified that at the previous trial evidence was introduced as to the value of the property in Revere; that there was a false representation that the note was a receipt, and that when the plaintiff signed it she believed it to be a receipt, and had been defrauded in that way; that at the former trial he testified that when he called on the plaintiff to submit Patten's offer he told her that Patten had no ready money, but that a friend of his would give a second mortgage on a piece of property in Revere for the furniture for Patten; that the plaintiff said she could not accept the mortgage because she needed ready money; that the witness said he could raise her $300 on the mortgage, and in reply to her inquiry as to the size of the first mortgage told her that it was $1,800, and that in his opinion there was margin enough on the value of the property to secure the payment of $1,200; that he offered to take her to the place and show it to her, but she declined to go; that he never made the statement that Patten was building a house for himself upon the property, or that there was only a small first mortgage upon it which amounted to nothing, or that the property was worth $3,800; that the plaintiff, at the office of the witness, signed the assignment of the mortgage to Llewellyn H. Bartlett and the collateral note, both of which were read to her, and that she

said nothing; and that he did not state to her that the paper which she signed was a receipt, and would in no way affect the title to the mortgage.

Llewellyn H. Bartlett testified for the defendant that in 1892 he received an assignment of the mortgage of the property at Revere and advanced $300 for it, and that he testified to the same effect at the previous trial, except that there he testified that he took the mortgage at his brother's request.

The plaintiff, in rebuttal, denied that at the former trial she testified that she did not think the defendants exercised proper skill, ability, or care in protecting her interest in the sale, or that she had said that Bartlett did not properly investigate the financial responsibility of Patten or McNamara, or that she testified that she said Bartlett ought to have procured a mortgage on her own property, and that he was negligent in not so doing, and that so far as she remembered the testimony at that trial in regard to the matters set forth in the declaration as constituting a fraud upon her was substantially the same as in the present case.

This was all the evidence material to be reported. At the close of the evidence the defendants requested the judge to rule: 1. that upon all the evidence in the case the plaintiff could not recover; 2. that the decree in the suit in equity was a bar to the present action. The judge ruled that the decree was a bar to the count in tort, but not to the count in contract, declined otherwise to rule as requested, and, under instructions to which no exception was taken, submitted the case to the jury upon the count in contract.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*E. R. Anderson*, for the defendants.

*S. L. Whipple*, (*W. R. Sears* with him,) for the plaintiff.

MORTON, J. There are two questions in this case: first, whether the decree in the suit in equity brought by the plaintiff against the defendants and one Llewellyn H. Bartlett is a bar to this action; secondly, whether there is any evidence warranting a verdict for the plaintiff.

The declaration contains two counts, one in contract, and one in tort, — both for the same cause of action. The court ruled that the decree was a bar to the count in tort, but not to the

count in contract, and to so much of this ruling as held that the decree was not a bar to the count in contract, as well as to the refusal to rule that on all the evidence the plaintiff could not recover, the defendants excepted.

The bill of exceptions also presents a question relating to the admissibility of evidence, but the defendants have not argued it, and we treat it as waived.

The fact that the form of action was different in the former case from that in this, and that one of the defendants in that case is not a defendant in this, will not prevent the decree from operating as a bar, if the cause of action was the same, and the case was tried on the merits and the same question which is presented here was tried and determined there, or if the question now presented was in fact tried and determined in that proceeding, though the cause of action might not have been the same. *French* v. *Neal*, 24 Pick. 55, 61. *Bigelow* v. *Winsor*, 1 Gray, 299, 302. *Foye* v. *Patch*, 132 Mass. 105, 110, 111.

There was contradictory testimony on the question whether the same issue which now is presented was in fact tried and determined in the former suit. But that question does not appear to have been submitted to the jury, nor does there appear to have been any request by the defendants that it should be. Unless, therefore, it appears from the pleadings that the cause of action in that case was the same as that set forth in the count on which this case was submitted to the jury, the request to rule that the decree operated as a bar was rightly refused.

Briefly stated, the cause of action set out in the bill in equity was that the present defendants, purporting to act as an agent of the plaintiff in regard to the sale of certain property, and in regard to certain transactions relating thereto described in said bill, conspired together by means of false and fraudulent representations and dealings in regard to said .transactions and property to defraud her out of said property and the proceeds thereof, of which it was alleged in substance that they and certain persons who were their instruments had possession, and which they held in equity and good conscience, as trustees for the plaintiff. The prayer of the bill was that they should be compelled to transfer and assign said property to the plaintiff.

The cause of action set out in the count in contract in the

present case is, that the plaintiff employed the defendants to sell certain property, being the same referred to in the bill in equity; that they negotiated the sale which she, relying upon them, carried out, receiving as security for payment of the sum for which the property was sold a mortgage on certain land in Revere; that the purchaser was irresponsible and the security worthless or nearly so; and that the defendants failed to exercise proper care and diligence in protecting the plaintiff's interests as her agents.

It is plain, we think, from this statement that the causes of action in the two cases were different. "It is true," as was said in *Norton* v. *Huxley*, 13 Gray, 285, 290, 291, "that both originated in the same series of transactions, and in the conversations and communications which took place between the parties concerning them." But, as is also said in that case, "Proof which would fully support the one would have no tendency to maintain the other." The fact that it may have been found in the suit in equity that the defendants were not guilty of fraud and conspiracy would have no tendency to show that they might not be guilty of negligence in looking after the plaintiff's interests as her agents, even though facts cognizable in this case might have been incidentally referred to and considered in that. *Norton* v. *Huxley*, 13 Gray, 285. *Gaylord* v. *Pelland*, 169 Mass. 356. *Stark* v. *Starr*, 94 U. S. 477, 485, 486. The fact that both counts are described as for the same cause of action is immaterial. The question is whether the cause of action set out in the count on which the case went to the jury is the same as that set out in the bill in equity. For reasons already given, we are of opinion that it was not.

We think that there was testimony which warranted the jury in finding that there was negligence on the part of the defendants. There was testimony tending to show that the plaintiff relied on the defendants in regard to the sale and the sufficiency of the security, and that the defendants accepted the responsibility. Under those circumstances they were bound to exercise reasonable care in respect to the sale and the security. *Barnard* v. *Coffin*, 138 Mass. 37, 44. There was testimony tending, amongst other things, to show that the value of the property at Revere was only $2,300; that there was a first mortgage

on it of $1,800, and that the plaintiff's security consisted of a second mortgage on it of $1,200; that the defendant Bartlett told her that she was perfectly secure; that no security was taken by the defendants on the property which she conveyed, and which was sold shortly after by the purchaser for $1,000 or $1,100; and that Patten, the purchaser, became insolvent in about three months after the sale and purchase. We think that it was competent for the jury to find from this and other evidence that the defendants had failed to use that reasonable care which a due regard for the plaintiff's interests required, and that she had sustained damage thereby.

*Exceptions overruled.*