JAMES R. COREY AND JARVIS W. FERRIS, In Equity,

*vs.*

INDEPENDENT ICE COMPANY AND ROBERT B. STONE, "Trustee"
so called.

SAME

*vs.*

CHARLES RUSSELL et als., Quo Warranto.

Cumberland.    Opinion April 5, 1910.

*Judgment.   Res Judicata.   Foreign Judgments.   U. S. Statute, July 2, 1890.*
*U. S. Constitution, Article 4, section 1.*

Where a Massachusetts court by its decree found that certain shares of the
stock of a corporation were owned by certain individuals and not by the
corporation, and no appeal from the decree was taken, *held* that the decree
barred a subsequent suit in Maine on the same issue.

Under the Constitution of the United States, Article 4, section 1, requiring
each State to give full faith and credit to judicial proceedings in other
States, a judgment in Massachusetts can be pleaded in bar in Maine, when-
ever it could be so pleaded in Massachusetts courts.

As a general rule a judgment between the same parties or their privies is a
final bar to any other suit for the same cause of action, and is conclusive,
not only as to all matters which were tried in the first action, but as to all
matters which might have been tried where the court has jurisdiction, the
proceedings are regular, and there is no fraud.

A prior judgment concludes all issues tried and decided, as to all subsequent
litigation between the same parties and their privies, including suits not
for the same cause of action.

On appeal by defendants.    Sustained.    Bill dismissed.    Quo
warranto dismissed.

Two cases, a bill in equity and an information in the nature of a
quo warranto.

The bill in equity prayed for an injunction to restrain the defend-
ant, Robert B. Stone, from voting on 509 shares of the preferred
stock of the Independent Ice Company or exercising any rights as

stockholder or owner thereof, and that he be ordered to deliver up the certificate of such shares to the plaintiffs, as officers of the Independent Ice Company and the proper custodians of its property. The defendants filed a demurrer, a plea in bar, and an answer to the merits.

The quo warranto proceedings were instituted to oust the defendants named therein, from certain offices of the Independent Ice Company, which, it was alleged, they had usurped and were illegally holding. The defendants filed a demurrer, a plea in bar, and an answer to the merits.

The two cases were heard together before the Justice of the first instance, who made a final decree for the plaintiffs in the equity case, and rendered judgment for the plaintiffs in the quo warranto proceedings. The defendants in both cases then appealed.

The cases are stated in the opinion.

MEMO. Mr. Justice BIRD having been of counsel, did not sit in these cases.

*Symonds, Snow, Cook & Hutchinson, Sherman L. Whipple,* and *Alexander Wilson,* for plaintiffs.

*Bird & Bradley,* and *Anthoine & Talbot,* for defendants.

SITTING: EMERY, C. J., PEABODY, SPEAR, CORNISH, KING, JJ.

SPEAR, J. These cases involve a bill in equity and an information in the nature of quo warranto and depend substantially upon the same state of facts. The finding of the sitting Justice was in favor of the plaintiffs in each proceeding, and the cases are here on appeal by the defendants. The Independent Ice Company is a corporation organized under the laws of Maine. At the date of filing the bill the plaintiff Ferris, was president and Corey was treasurer and both were directors of the corporation. There had been issued 1000 shares of preferred stock and 500 shares of common stock, the common stock having no voting power. The control of the corporation was therefore vested entirely in the ownership of the 1000 preferred shares. Of these preferred shares the plaintiffs held a total of 491, of which Corey owned 245, Ferris 246, and

each had a certificate representing his stock ownership. The remaining 509 shares of preferred stock were represented by a certificate standing in the name of the defendant Stone, described as "trustee."

The plaintiffs allege that until shortly before the filing of the bill they supposed that the defendant Stone held the 509 shares of stock as trustee for the defendant company. At about this time upon information that Stone claimed to hold these shares in trust for other parties than the defendant company, the plaintiffs made a formal demand on Stone that these shares as the company's property should be delivered to them, the officers of the corporation entitled to hold them. This demand the defendant Stone refused to comply with, and in return threatened to so vote the 509 shares at the impending annual meeting as to deprive the plaintiffs of their official positions and of the control of the affairs of the corporation. Thereupon the bill was filed.

The plaintiffs' contention as set forth in the language of their brief, is this: "The basis of the plaintiffs claim as set forth therein is that the 509 shares are actually held in trust by the defendant Stone for the corporation, and are actually its property, because the purchase price was paid out of the funds of the corporation under circumstances which show an intention and agreement to create a trust or, at least, that a resulting trust arose by operation of law.

The plaintiffs' claim accordingly is that the outstanding certificate was illegally held by said Stone except as trustee for the corporation ; and since the stock belonged in equity to the corporation, he had no right to vote thereon or to make use of the same to deprive the plaintiffs of their official positions and the control of the corporation, to which, as owners of a majority of the stock legally outstanding, they were entitled.

The bill prays for an injunction to restrain the defendant Stone from voting on said shares or exercising any rights as stockholder or owner thereof; as further an incidental relief there is a prayer that the defendant Stone be ordered to deliver up such certificate to the plaintiffs, as officers of the corporation and proper custodians of its property.

The annual meeting was held after the filing of the bill at which the defendant Stone voted said 509 shares against the protest of the plaintiffs as a result of which vote the defendants named in the quo warranto proceeding were declared elected to the respective offices, as set out in the petition.   The defendants thereupon took possession of the offices and excluded the plaintiffs from the performance of their duties as president, treasurer and directors of the corporation. The quo warranto proceedings were instituted to oust the defendants named in that case from the respective offices which they had occupied.

The averments of the information are practically the same as those of the bill in equity except so far as they recite occurrences subsequent to the filing of the bill.   The two suits are complimentary to each other.   The quo warranto proceeding involves the same question as the bill in equity except that they are instituted to correct a wrong accomplished, while the bill is filed for the prevention of a wrong.

The plaintiffs also state the issue as follows :

"The issue, therefore, which the cases present is whether the plaintiffs as holders of a majority of the stock outstanding entitled to vote are entitled to elect the officers of the corporation, control its affairs and enjoy the incidental benefits of such control, or whether the defendant Stone has such a title to the certificate standing in his name as "trustee" as to entitle him to vote thereon, to elect officers and enjoy the incidental benefits of control.   The controversy is one between stockholders or alleged stockholders for control of the corporation."

It is also asserted that the equity suit is not a minority stockholders' bill, but rather a bill to declare that the plaintiffs are majority stockholders ; that the bill has for its object to enforce directly individual rights of the plaintiffs rather than rights of the corporation ; that the corporation itself is not a necessary party to the bill.

To the bill, setting forth the foregoing contentions, the defendant filed (1) a demurrer, (2) a plea in bar, and (3) an answer to

the merits. The plea in bar raises the defense of res adjudicata and in the opinion of the court must prevail.

It appears that in May, 1907, Frank H. Foster of Somerville and Eugene S. Currier of Chelsea, both of the Commonwealth of Massachusetts, brought a bill in behalf of themselves and all other stockholders of the Independent Ice Company against Reuben H. Hopkins and others, among whom were Robert B. Stone and the Independent Ice Company, Robert B. Stone and the Independent Ice Company being the same parties referred to by these names in the plaintiff's bill. It is evident from the plaintiff's bill that the gravamen of their complaint is (1) that a seventy-five thousand dollar loan ($75,000) from the American Loan & Trust Company was made and intended to be made to the Independent Ice Company, and (2) that the 476 shares of the capital stock held by Stone as trustee were purchased with the proceeds of this loan and that the other 33 shares, purchased by funds advanced by Flanders, by final agreement were to be paid for by the Independent Ice Company out of the proceeds of the sale of its bonds, and thus become the property of the corporation. Therefore stripped of all verbiage, the substantial allegations of the plaintiffs' bill are (1) that the Independent Ice Company was the actual debtor for the seventy-five thousand dollar loan and (2) that the defendant Stone held the 509 shares of preferred stock as trustee for the Independent Ice Company, and not as trustee for any other parties.

It seems to us that these were the precise questions presented in the bill before the Massachusetts court. After alleging a conspiracy on the part of the defendants to get a controlling interest of the Independent Ice Company the bill says: "In furtherance of this conspiracy they caused the said Independent Ice Company to secure a loan from the American Loan and Trust Company of Boston, of seventy-five thousand dollars and with the sum so borrowed, the said company purchased from said Homans and Burnham the 476 shares of the capital stock owned by them and paid its debts, for which sum Homans and Burnham were in some way responsible, to the amount of Sixty-five Thousand, Two Hundred and Forty-seven Dollars and Eighty-nine cents ($65,247.89). The

said Ferris, Hopkins and Flanders then, as your orators are informed and believe, loaned to the said Independent Ice Company sufficient money to purchase 33 other shares of stock, which were thereupon so purchased by said company."

In their answer the defendants traverse the plaintiffs' allegations, specifically denying the truth of the averment with respect to the loan and ownership of the 509 shares of stock. In item 4 they say: "The respondents deny that in furtherance of such conspiracy, the respondents, Bartlett, Hopkins and Flanders caused said Independent Ice Company to secure a loan from the American Loan & Trust Company of Boston, of Seventy-five Thousand Dollars ($75,000). The respondents deny that with such sum, so borrowed, said company purchased from said Homans and Burnham the four hundred and seventy-six (476) shares of the capital stock owned by them, and paid its debts for which said Homans and Burnham were in some way responsible, to the amount of Sixty-five Thousand Two Hundred and Forty-Seven and Eighty-nine one-hundredths ($65,247.89) dollars. The respondents deny that Bartlett, Hopkins and Flanders loaned to said Independent Ice Company sufficient money to purchase thirty-three (33) other shares of stock, which were thereupon so purchased by said company; and said respondents deny that any of the shares of stock, referred to in the complainants' bill, were at any time purchased by said company."

The prayers in the plaintiffs' bill were: First. That an injunction issue from this Honorable Court temporarily restraining said defendant Robert B. Stone, from selling, assigning, transferring or in any way parting from the possession or title of a certain certificate purporting to represent 509 shares of the preferred stock of the Independent Ice Company except by delivery of the same to the plaintiffs as officers of said Independent Ice Company for cancellation, until order of this Honorable Court. Second. That an injunction issue restraining said Robert B. Stone until further order of this Honorable Court from voting of said certificate of 509 shares of preferred stock of the Independent Ice Company, or exercising

any rights as holder or owner thereof.   Third.   That upon hearing, it may be declared that said Robert B. Stone shall deliver up to the plaintiffs as officers of the defendant the Independent Ice Company said certificate purporting to represent 509 shares of the preferred stock of said Independent Ice Company, and that the same be duly cancelled and retired."

The prayers in the Massachusetts bills were :   "(1)   That Robert B. Stone be enjoined during the pendency of this suit from parting with any of the stock of the Independent Ice Company now standing in his name as trustee or otherwise.   (2)   That said Robert B. Stone be ordered by decree of this court to return to the treasurer of said company the 509 shares of stock of said company standing in his name as trustee, and that he be further enjoined from acting as an officer of, or further intermeddling with the affairs of, this corporation."   The other prayers are not material to the issue here raised.   While differing in form, the prayers in the plaintiffs' bill are identical in substance with those in the Massachusetts bill.   It therefore becomes apparent that both the allegations of fact and the prayers for relief in the two bills are practically the same.

In the Massachusetts case the sitting Justice made a long finding of fact, upon which he based his decree, in which he specifically found,  "As a matter of fact those funds, that seventy-five thousand dollars ($75,000) were not the funds of the Independent Ice Company ; they were either the funds of the Boston Ice Company or these three defendants, and it is not material as far as this case is concerned whether they were the funds of one or the other."   In a supplementary finding of facts the sitting Justice further said :   "I find that the capital stock of the Independent Ice Company purchased by the defendant, Hopkins, Bartlett and Flanders, for the purpose of obtaining control, was composed of 238 shares purchased from F. W. Homans ; 238 shares from H. A. Burnham ; 20 shares purchased from H. A. Spaulding ; 8 shares purchased from P. Couglin ; 5 shares purchased from W. H. Brewster, making a total of 509 shares ; and that all said stock was purchased, and paid for, with money *not* of said Independent Ice Company but of said

Hopkins, Bartlett and Flanders; and that said 509 shares are now represented by the 509 shares of preferred stock standing in the name of Robert B. Stone, trustee."

Upon these findings of fact with reference to these particular matters appears the following final decree.: "This case came on to be heard at this sitting, and was argued by counsel, and it appearing, and having been found that five hundred and nine (509) shares of the capital stock of the respondent, Independent Ice Company, was purchased by the respondents, Hopkins, Bartlett and Flanders with their own money, and not with the money of said Independent Ice Company, and that said five hundred and nine (509) shares are now represented by five hundred and nine (509) shares of preferred stock standing in the name of the respondent, Robert B. Stone as trustee, and that the said Independent Ice Company has no right to have any of said stock surrendered, or cancelled, and that the complainants have in no wise been defrauded by the respondents, or any of them, all as more fully appears in the finding of fact heretofore entered, and forming a part of the record in this case, thereupon, upon consideration thereof, it is ORDERED, ADJUDGED AND DECREED that the complainants' bill be, and hereby is, dismissed, and that the respondents recover their costs against the complainants in the sum of sixty-seven dollars and fifty-one cents and that execution, in the ordinary form, issue therefor."

There can be no question whatever that the subject matter litigated in the Massachusetts case was precisely the same as that litigated in the Maine case. It requires no extraneous evidence to establish the identity of the one with the other.

Now then appears the vital question in the determination of this case, can the Maine case be differentiated from the Massachusetts case so as to relieve the former from the defense of res adjudicata? The plaintiffs undertook to distinguish the cases by asserting that the Maine suit it not a minority stockholders' bill, but rather a bill to declare that the plaintiffs are majority stockholders. But it is apparent that the assertion that the plaintiffs are majority stockholders does not make them so. Whether they are or not depends upon the establishment of certain facts, the most important of which

is that they own a majority of the voting stock. Whether they own such a majority depends entirely upon the number of shares owned by other stockholders. In this case the other stockholders claim to be represented by 509 shares, a clear majority, held by Robert B. Stone as trustee. Whether these 509 shares were held by Robert B. Stone as trustee for various stockholders, or whether they belonged to the corporation and were not votable, was the precise question determined in Massachusetts, adversely to the claim of these plaintiffs. Therefore whatever they may call themselves in their bill and in their argument, if the Massachusetts judgment is valid and binding, these plaintiffs are not majority stockholders, and their bill is not a majority stockholders' bill. The assertion that they are majority stockholders does not differentiate their case from that of the Massachusetts case. A judgment in Massachusetts can be pleaded in bar in Maine, whenever it could be so pleaded in Massachusetts courts. *Cleaves* v. *Lord*, 43 Maine, 290; *North Bank* v. *Brown*, 50 Maine, 214; *Sweet* v. *Brackley*, 53 Maine, 346; *Whiting* v. *Burger*, 78 Maine, 287; Const. U. S. Art. 4, sec. 1, an act of Congress of May 26, 1790.

It is not in controversy that the plaintiffs in the Maine case holding 491 shares of the voting stock were, during the proceedings of the Massachusetts case, also stockholders in the defendant corporation holding the same 491 shares. The Massachusetts bill was brought in behalf of the plaintiffs "and all other stockholders of the Independent Ice Company." These plaintiffs, however, were not made parties to the bill, but were present and represented by counsel during the trial of the Massachusetts case. They had an undoubted right as stockholders to become parties to the litigation for the protection of their interests, if they saw fit to do so, at any stage of the proceedings. Under the well established rules of law we think these plaintiffs being stockholders and vitally interested in the ownership of the 509 shares in the hands of Stone as trustee, and also being present and represented by counsel at the trial, must be regarded as privies to this litigation and to have had their day in court. With respect to the Massachusetts litigation it may be said that (1) It nowhere appears that the Massachusetts court did

not have jurisdiction; on the contrary all parties to that suit voluntarily appeared. (2) It nowhere is alleged that there was any fraud or collusion in the Massachusetts case. (3) It nowhere appears that the Massachusetts decision was erroneous or unlawfully rendered; on the contrary the proceedings in the Massachusetts case were regular and lawful.

Conceding jurisdiction, absence of fraud, and regularity in proceedings, we think it will not be challenged as a general rule, that a judgment between the same parties, or their privies, is a final bar to any other suit for the same cause of action and is conclusive not only as to all matters which were tried in the first action, but as to all matters which might have been tried.

In *Emery* v. *Goodwin*, 13 Maine, 14, a bill in equity was brought by Ward against the guardian for an alleged illegal sale of real estate. The defendant pleaded in bar a former suit in the name of the Judge of Probate, involving the same question. Although the plaintiffs in the two bills were not the same, yet the court say: "It is an elementary principle of high importance in the administration of justice that the judgment or decree of a court of competent jurisdiction is final as to the subject matter determined and that it cannot be opened before any court of concurrent jurisdiction. The authorities go further and maintain the position that the parties are concluded as to whatever might have been litigated or decided in the former suit." See also *Stout* v. *Lye*, 103 U. S. 66; *Werlein* v. *New Orleans*, 177 U. S. 390; *Harlow* v. *Bartlett*, 170 Mass. 584.

*Corbett* v. *Craven*, 193 Mass. 30, was a case in which the plaintiffs were not the same yet the court held; "The decree of 'Bill dismissed' was a final decree, upon the merits, that settled forever all matters involved in that suit, and includes 'everything that was litigated or that might have been litigated.'" Upon this point may be cited the following cases: *Emery* v. *Goodwin*, 13 Maine, 14; *Rankin* v. *Goddard*, 55 Maine, 389; *Blodgett* v. *Dow*, 81 Maine, 197; *Paul* v. *Thorndike*, 97 Maine, 87; *Insurance Company* v. *Tremblay*, 101 Maine, 585; *Barnes* v. *Huntley*, 188 Mass. 374.

It may also be laid down as a general principle that a prior decision is conclusive upon all matters and issues which were in fact there tried and decided, in all subsequent litigation between the same parties, or their privies, even in a suit which is not for the same cause of action. *Chase* v. *Walker*, 26 Maine, 555; *Sturtevant* v. *Randall*, 53 Maine, 149; *Lynch* v. *Swanton*, 53 Maine, 100; *Walker* v. *Chase*, 53 Maine, 258; *Cromwell* v. *County of Sac.*, 94 U. S. 351.

In *New Orleans* v. *Citizens Bank*, 167 U. S. 371, it is said: "The estoppel extends to every material allegation or statement which having been made on one side, and denied on the other, was at issue in the cause, and was determined therein."

While the plaintiffs in this suit were not made parties to the bill in the Massachusetts case, we think it is nevertheless a sound rule of law that a stockholder is privy to and bound by a decree or judgment against the corporation in regard to corporate matters, although the stockholder was not made a party to the suit. *Willoughby* v. *Chicago Junc. Ry. Co.*, 50 N. J. Eq. 656, is an elaborate and well reasoned opinion in which the above principle of law is fully sustained. In Vanfleet on former adjudication, sec. 502, page 998, the reason for this rule is stated as follows: "The complainant stockholder is merely an agent of the corporation proceeding for its benefit because the regular agent refuses to do so, and the corporation is the real party in interest, and is bound by the decree, and of course, if so bound, neither it nor any stockholder providing for its benefit can re-litigate the matters decided. See also *Herst* v. *Putnam Mining Company*, 28 Utah, 184 (77 Pac. Rep. 753); *Memphis R. R. Company* v. *Grayson*, 88 Ala. 572.

In *Merrill* v. *Suffolk Bank*, 31 Maine, 57, it was held that a stockholder in a corporation is so far a privy to a judgment against the corporation that he may prosecute a writ of error to reverse the judgment.

It may be said at this juncture that the assertion on the part of the plaintiffs that this is not a minority stockholders' bill, has not been fully answered and that consequently the above rules of law do

not apply.  If, however, this bill is not a minority stockholders' bill, in whose interest can it be said to have been brought?  We presume it will be conceded that the character of a bill must be determined upon the allegations of fact and prayers for relief.  This bill is brought in behalf of the plaintiffs and all other common shareholders of the defendant company who may desire to join in the proceedings.  It then alleges that the seventy-two thousand dollar loan spoken of was made to the Independent Ice Company, and that the 509 shares of stock put in the name of Robert B. Stone, trustee, were paid for from the funds of the Independent Ice Company and thereby became the property of the defendant company, and that the same in equity should, upon demand, be turned over for cancellation to the plaintiff, Corey, as TREASURER of the corporation. The prayer in the bill, following the allegations, demands that it may be decreed that said Robert B. Stone shall deliver to the plaintiffs, as officers of the defendant company, the certificate purporting to represent 509 shares of preferred stock, and that the same may be cancelled and retired.  We deem it important to here note that the plaintiffs nowhere pretend to own these 509 shares.  On the contrary they aver that they are the property of the corporation, having been purchased with corporate funds, and demand that they shall be turned over, not to the plaintiffs, but to the treasurer. Their bill, therefore, must be regarded to have been brought for the benefit of the corporation, as the return of these shares would add to the corporate assets whatever their value might be.

While the cancellation or return of the 509 shares would result in giving the plaintiffs a majority of the voting stock, it is, nevertheless, a result that follows cancellation and not a fact which precedes it.  Hence, the plaintiffs' assertion that this is a majority stockholders' bill can only be made upon the assumption that the 509 shares held by Stone as trustee are corporate property, a statement which results in merely begging the question.  In other words, they predicate the assertion that they are majority stockholders upon the ownership of the 509 shares by the corporation, the title to which is the very question they seek in their bill to determine.

Whatever the name given to the bill or the character ascribed to the plaintiffs, there still remain the two paramount issues, presented by the bill, the prayers, the answer and the proof, (1) To whom was made the seventy-five thousand dollar loan? (2) In whom was the title to the 509 shares of stock? Both of which, if decided in favor of the plaintiffs, inure directly to the benefit of the corporation. In view of the undisputed elements in the case, we are of the opinion that the plaintiffs' bill must be declared to have been brought for the benefit of the corporation, in which the corporation was the real, and the plaintiffs the nominal, party.

Therefore, whatever our conclusion might be upon the finding of facts made by the Maine court, we feel compelled to say that the same issues involved in the Maine cases were litigated and determined in the Massachusetts case, and that the plea, res adjudicata, is an effectual bar to the prosecution of the plaintiffs' bill.

The plaintiffs further contend that the purchase of the 509 shares of voting stock was acquired in violation of the Federal Anti-Trust act which provides; Sec. 1. "Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraining trade or commerce among the several states, or with foreign nations is hereby declared to be illegal . . . ." It is claimed that the Independent Ice Company was a competitor of the Boston Ice Company and that the manner in which the 509 shares of the Independent Ice Company's stock was acquired shows that there was a combination on the part of the officers of the Boston Ice Company to remove the Independent Ice Company from further competition in the ice business.

But upon this point it is only necessary to observe that the evidence, regarded in its most favorable light to the plaintiffs' contention, falls far short of sustaining it. As the quo warranto proceedings involve precisely the same issues as those considered in the equity proceeding, it is evident that the former procedure must stand or fall with the latter.

*Appeal sustained.*

*Bill dismissed.*

*Information for quo warranto dismissed.*