In re LETITIA TODD BRECK and BARBARA BRECK; LEWIS B. TEBBETTS, Petitioner, v. REBECCA RICKART and LLOYD H. RICKART.

**In Banc, July 10, 1913.**

1. **HABEAS CORPUS: Certiorari as Ancillary: Return.** In a *certiorari* proceeding, in aid of and ancillary to the writ of *habeas corpus*, no other return is called for or can be made, except the sending up of the record of the court called for by the *certiorari* writ, to be adjudged as to legality *vel non* by the showing on the face thereof.

2. ————: **Former Adjudication: Not Pleaded.** When a party to a *habeas corpus* writ, or a *certiorari* issued as ancillary thereto, has no opportunity to plead his defense of former adjudication, he may give it in evidence, under the general issue, and it will be as conclusive as if pleaded.

3. ————: **Return: Controverted.** A return to the writ of *habeas corpus* is not conclusive as to the facts stated therein, but its averments may be controverted, either by a reply or similar pleading, traversing or denying them, or by a pleading in the nature of confession and avoidance new facts may be set up to avoid the effects of the matter averred in the return.

4. ———: ———: **No Denial or Avoidance.** If the averments of the return to a writ of *habeas corpus* are not denied or contradicted by some appropriate pleading, the facts set out in the return are to be taken as true, regardless of the allegations pleaded in the petition; and the issue then becomes one of law, to be tried upon the case made, and no fact *dehors* the record will be considered.

5. ———: ———: **Former Adjudication: Change in Situation.** Where petitioner in *habeas corpus* does not deny the averment of former adjudication made in respondent's return, but avers a change in situation since such adjudication, the burden is upon him to prove such change, the record revealing identity of names, and. the presumption arising of identity of persons from identity of names and of the continuation of a fact once shown to exist.

6. ———: Res Adjudicata: **Change in Situation.** To one deprived of his liberty there is no limit by *res adjudicata* to the number of applications he may make for release by the writ of *habeas corpus*, except the bare statutory one that successive applications must not be made to courts of inferior jurisdiction. But when the applicant has once been discharged by a court of competent jurisdiction, the doctrine of former. adjudication applies and is conclusive till the condition of the person whose liberty is in question has changed.

7. ———: ———: **Appointment of Guardian: Adjudication by Circuit Court and Court of Appeals.** Where petitioner, by his writ of *certiorari* issued out of the circuit court, sought to have quashed and annulled the action of the probate court in refusing to recognize him, named in the will of his daughter as the guardian of her children, as such temporary guardian, and appointing the respondent as guardian, and the circuit court refused to quash the record of the probate, and thereupon he appealed to the Court of Appeals, which affirmed the judgment of the circuit court, said adjudication became final and conclusive, and petitioner cannot by a writ of *habeas corpus* or by a writ of *certiorari* ancillary thereto, sued out of the Supreme Court, to recover the custody of the children from the guardian so appointed, have the validity of that order of the probate court further determined. The circuit court had full power to determine the legality of the appointment of respondent as guardian, and the Court of Appeals had jurisdiction to determine the validity of the judgment of the circuit court.

8. TESTAMENTARY GUARDIAN: **No Acceptance Within Six Months: Appointment of Another.** The statute providing that if the testamentary. guardian fails to notify the probate. court of his acceptance of the guardianship of the. minor children. and to give bond, within six months after the probate of the

will, the court may appoint a guardian as if no appointment had been made by the testator, is so far mandatory as to invest the probate court with a discretion to appoint a different person, just as if the will had nominated no one, where the testamentary guardian fails for six months to file such notice and acceptance.

*Held* by GRAVES, J., with whom LAMM, C. J., and WOODSON, J., concur, that the circuit court having determined that the order of the probate court refusing to recognize the testamentary guardian and appointing respondent was valid, and that judgment having been affirmed by the Court of Appeals, the validity of that order is *res adjudicata;* but, were the point open for adjudication, he is of the opinion that when the testamentary guardian filed his acceptance of the trust with the probate court prior to any action having been taken to invoke the jurisdiction of the court in the appointment of another and different guardian, such act deprived the probate court of any jurisdiction further than to fix a bond for the testamentary guardian and thereafter see that the trust imposed by the will was carried out.

## Habeas Corpus.

WRIT QUASHED.

*J. D. Johnson* and *Loomis C. Johnson* for petitioner.

(1) In *certiorari*, it is proper for a superior court to exercise its supervisory powers (1st) where the inferior court has acted without jurisdiction; and (2nd) where, having jurisdiction, it has acted in excess thereof; or (3rd) where it appears on the face of the record that the trial court rendered a judgment which it had no right in law to render. Railroad v. Board of Equalization, 64 Mo. 308; State ex rel. v. Neosho, 57 Mo. App. 198; Railroad v. Young, 96 Mo. 43; State ex rel. v. Moniteau Co. Ct., 45 Mo. App. 387; State v. Schneider, 47 Mo. App. 669; State ex rel. v. Reynolds, 190 Mo. 583. (2) The probate court being a court of limited jurisdiction, there are no intendments in favor of its jurisdiction and therefore no matters are

to be held within its jurisdiction except they expressly appear to be so. Ex parte O'Brien, 127 Mo. l. c. 486; Rohland v. Railroad, 89 Mo. 180; State v. Metzger, 26 Mo. 65. (3) And hence it is competent to attack the jurisdictional recitals in the judgment of such court. Ex parte O'Brien, 127 Mo. 491. (4) Recitals of facts contained in the petition for the writ of *certiorari* or in the writ itself, not controverted by the return, must be taken as admitted. State ex rel. v. Stephens, 146 Mo. 681; State ex rel. v. McDavid, 84 Mo. App. 47; State ex rel. v. Moore, 84 Mo. App. 19. (5) The provisions of the statutes, insofar as they relate to the time in which bond shall be given by testamentary guardians, are directory merely and not mandatory. Secs. 408, 409, R. S. 1909; State ex rel. v. Lafayette Co. Ct., 41 Mo. 554; State ex rel. v. Churchill, 41 Mo. 43; State ex rel. v. Howard Co. Ct., 41 Mo. 252; State ex rel. v. Texas Co. Ct., 44 Mo. 230. (6) If the statute (section 409) is to be construed to provide that the testamentary guardian shall notify the probate court of his acceptance of the testamentary guardianship within six months, then the same principle applies, and such provision is directory merely. Sec. 409, R. S. 1909; cases cited under point one. (7) If the reason for a law fails, the law itself does not apply (*cessante ratio, cessat ipsa lex*). Russell v. Russell, 122 Mo. 238; Schultz v. Sutter, 3 Mo. App. 141; Costigan v. Tr. Co., 38 Mo. App. 225; Boyle v. Mo. Pac., 21 Mo. App. 425; Smelting Co. v. Stevenson, 4 L. R. A. 62. Nor does the law require that a useless, or needless thing be done. Lumber Co. v. Knight, 157 Mo. 379. The requirement as to the giving of bond by the testamentary guardian is for the purpose of protecting the estate of the ward, coming in the hands of the guardian. Sec. 424, R. S. 1909; State ex rel. v. Tittman, 134 Mo. 162; State ex rel. v. Bolte, 72 Mo. 272; State ex rel. v. Weaver, 92 Mo 673. Hence, if, as here, the

guardian is possessed of no property belonging to the
ward then there can be no property interest to be pro-
tected by a bond, and the reason for the applica-
tion of the statute being absent the statute does not
apply. (8) The statutes provide that the guardian
shall give bond in twice the amount of the ward's es-
tate coming into his hands. Secs. 408 and 424, R. S.
1909. Applying these statutes to the case presented
at bar, Tebbetts, the testamentary guardian, could
have been required to give bond only for twice the
amount of nothing or nothing—an absurdity. Lumber
Co. v. Knight, 157 Mo. 379. (9) Under the terms of
the will, Tebbetts was appointed guardian only of the
persons of the minors and not of their estates. What-
ever property the Breck children may have acquired
from their mother passed not to Tebbetts as testa-
mentary guardian, but to Tebbetts and DeCamp as
trustees. (10) The record shows that the testamen-
tary guardian notified the probate court of his accept-
ance of the guardianship and offered to give bond long
before the probate court attempted to appoint a stat-
utory guardian. Under the authorities cited under
point 5, such acceptance and offer were binding on the
court and constituted a sufficient compliance with the
law by the testamentary guardian. Hence at the time
the respondent attempted to appoint Rebecca Rickart,
statutory guardian, relator Tebbetts was the lawful
guardian of the Breck minors, and the probate court
was without power to make the Rickart appointment
without first revoking Tebbetts' appointment under
the will. Bass v. Putnam, 79 Mo. App. 274. (11) It
is conceded that, if this court finds after a review of
the record of the probate court in the *certiorari* pro-
ceeding herein that the order of the probate court ap-
pointing a statutory guardian was and is a valid or-
der, the writ of *habeas corpus* should be quashed and
the Breck minors remanded to the custody of Rebecca
Rickart. (12) Assuming, but not conceding, that the

plea of *res adjudicata* made by the respondent in her return is, on the face of the record pleaded by her, a good and sufficient plea, it is apparent that if this court in the *certiorari* proceedings holds the order of Judge Holtcamp to be void, then a different state of facts immediately arises than upon which the judgment of the circuit court of the city of St. Louis in the *habeas corpus* proceedings there was predicated, and the respondent's plea must, of necessity, therefore, fail. Howe v. State, 9 Mo. 482; Weir v. Morley, 99 Mo. 489.

*Frank X. Hiemenz* for respondents.

(1) Probate courts, have exclusive jurisdiction over the appointment of guardians of minors; our Constitution does not establish, but provides for, probate courts in each county and fixes a jurisdiction which cannot be taken away by the Legislature; hence probate courts possess general jurisdiction over particular subjects. Constitution, sec. 34, art. 6. (2) Every testamentary guardian must qualify under the statutes; failing so to do, the probate court may appoint another. Secs. 408 and 409, R. S. 1909; Woerner on Guardianship, p. 58; Davidson v. Koehler, 76 Ind. 417; Wadsworth v. Connell, 104 Ill. 375. (3) The right to a testamentary guardianship must be claimed within six months from the probate of the will or it is lost. Woerner on Guardianship, p. 58. (4) Testamentary guardians are governed like all other guardians and must comply with the law relating to general guardians. Sec. 408, R. S. 1909. (5) *Certiorari* only brings up the record, and only such matters as appear from the face thereof and which go to the jurisdiction of the tribunal to which the writ is directed can be reviewed by such writ. Ward v. Board of Equalization, 135 Mo. 319; State ex rel. v. Patterson, 229 Mo. 369. (6) All guardians must give bond before entering upon the duties of their office and guardians of the estate must give bond in double the amount the value of

the estate. Sec. 424, R. S. 1909. (7) All guardians must in some manner bring themselves under the jurisdiction of the probate court, by appointment, as general guardians, and by acceptance, as testamentary guardians and letters of guardianship must be issued to them. The probate court must be in a position at all times to exercise jurisdiction and general supervision over the person holding the office of guardian. (8) The appointment of a testamentary guardian by law is only the nomination of him for the office of guardian. It has no greater legal effect until the person nominated complies with the terms of Secs. 408 and 409, R. S. 1909. (9) If the probate court is satisfied that it will be for the advantage of minors to appoint a curator of the estate different from the guardian of the estate, it has power so to do. Sec. 413, R. S. 1909. (10) Respondents are not required by law to keep a record of testamentary guardians who fail to accept and give bond as required by Secs. 408 and 409, R. S. 1909, hence it will be presumed on *certiorari* that respondent obeyed the law and would not have proceeded with the hearing if the testamentary guardian had accepted and given bond within six months after the probate of the will. State ex rel. v. Andrae, 216 Mo. 640. (11) Facts tending to show a judgment or order of a probate court void, for want of jurisdiction, should be found on the face of a record, otherwise regularity will be presumed. Desloge v. Tucker, 196 Mo. 601.

FARIS, J.—This is an original proceeding in *habeas corpus* by virtue of which the petitioner, Lewis B. Tebbetts, is seeking to obtain from respondents the custody of Letitia Todd Breck and Barbara Breck, who are minors, aged thirteen and twelve years, respectively.

Respondents are husband and wife. They base. their right to the custody of the said Letitia and Bar-

bara (hereafter for the sake of brevity called the "Breck children") upon the fact that they were on the 11th day of March, 1912, appointed by the probate court of the city of St. Louis guardian of the persons and curator of the estates, respectively, of said minors. Both parents of the Breck children are dead. The last survivor of these parents, Ellen M. Breck, their mother, died on the 15th day of December, 1905, testate, providing in her will as to her children, as follows:

"2d. I nominate and appoint my father, L. B. Tebbetts, guardian of my said children, and hereby confer upon him all the rights, powers and authority, which a testamentary guardian is entitled to exercise under the laws of the State of Missouri. Should he fail to qualify and act as such guardian; or should he, for any cause, cease to act as such guardian, after qualifying as such, I nominate and appoint my brother-in-law, Arthur P. DeCamp, guardian of my said children."

Petitioner Tebbetts, nominated in the will as testamentary guardian, is the grandfather of the Breck children. He is also the father of Rebecca Rickart, and this action is, *ergo,* of that most regrettable *genus,* family fight.

By the will of Ellen M. Breck, petitioner Tebbetts and one Arthur P. DeCamp, the brother-in-law of decedent, were made executors thereof without bond. She also devised to them as trustees all of her property, to be held by them in trust for her three children. The will was duly probated by Tebbetts and DeCamp and they on the 16th day of January, 1906, duly qualified as executors thereof, and there was issued to them by the probate court letters testamentary. The estate was administered to a final settlement, which was made on December 6, 1910, and being approved, Tebbetts and DeCamp were as executors ordered to pay over to themselves as trustees the bal-

ance ascertained to be due the estate, which they did and were discharged as executors. This final settlement, which was approved by the probate court, contained, among other items, pertinent or otherwise, this item of credit, to-wit:

"Oct. 13, 1908—By cash disbursed from time to time to Lewis B. Tebbetts and Arthur P. DeCamp, trustees under the will of Ellen M. Breck, deceased, for part of the proper education, support and maintenance of the minor beneficiaries, Lewis Tebbetts Breck, Letitia Breck and Barbara Breck, since December 15, 1905, the date of the death of the deceased, $6642.65."

Petitioner Tebbetts after the death of the mother of the three Breck children, took the latter immediately into his home, and housed them, fed, clothed and schooled them till they were taken from his custody by virtue of a writ of *habeas corpus* issued by one of the judges of the circuit court of the city of St. Louis. But Tebbetts did not for almost six years after the death of the mother of the Breck children, and after the probate of the will nominating him as testamentary guardian of said children, "notify the probate court of his acceptance of the guardianship," nor give bond, that is to say, not till September 6, 1911, at the hour of 12:30 p. m., at which time he filed with the probate judge in vacation a document reading thus, which he designates as an acceptance, to-wit:

To the Hon. Charles W. Holtcamp,

Judge of the Probate Court, City of St. Louis:

The petition of the undersigned Lewis B. Tebbetts, respectfully represents that he is a resident of the city of St. Louis, aforesaid, and is the grandfather of Lewis T. Breck, aged 14 years and 6 months; Letitia Breck, aged 12 years and 6 months; Barbara Breck, aged 11 years and no months; all of which minors reside in the city of St. Louis, Missouri; that said minors own no property and that under the terms of the will of Ellen M. Breck, deceased, duly probated, he was nominated and appointed guardian of said minors.

Wherefore he prays that he may be appointed guardian of the persons of said minors in accordance with said last will

of Ellen M. Breck, mother of said minors, not having been adjudged unfit for the duties of guardianship of said minors, the other lawful parent of said minors being dead at the time, and the applicant hereby notifies the probate court or judge thereof in vacation of his acceptance of the guardianship.

LEWIS B. TEBBETTS.

Thirty minutes later, on the same day, respondent Lloyd H. Rickart filed his application with the said probate court praying the court to appoint a statutory or "general guardian" for these minors, to quote literally the prayer of the application. This application is as follows:

In re Testamentary Guardianship of Tebbetts ·Breck,

Letitia Breck and Barbara Breck, minors.

Comes now Lloyd H. Rickart, and represents to the court that the minors above named are children of Ellen M. Breck, deceased, who departed this life on the 15th day of December, 1905, testate, and in and by her last will, duly proved and probated on the 16th day of January, 1906, devised all her property, real and personal, to Lewis B. Tebbetts and Arthur P. DeCamp, in trust for the sole use and benefit of the minors above named, and further in and by said will appointed and nominated Lewis B. Tebbetts guardian of her said children and in the event of his failure, refusal or inability to act, did appoint and nominate Arthur P. DeCamp as his successor.

Your petitioner further presents that neither the original testamentary guardian, Lewis B. Tebbetts, or his successor in said will provided, Arthur P. DeCamp, has at any time since the probating of the will of Ellen M. Breck, accepted said testamentary guardianship, nor has either of them given bond for the faithful performance of the same.

Your petitioner further represents that the natural parents of the above minors are dead.

Your petitioner further represents that Lewis B. Tebbetts is insolvent, a bankrupt in bankruptcy, and that his successor, Arthur P. DeCamp, is insolvent.

Your petitioner further represents that Tebbetts Breck is of the age of fourteen years; Letitia Breck of the age of twelve years and Barbara Breck of the age of eleven years; that Tebbetts Breck now resides with your petitioner in the city of St. Louis, Missouri, and that Letitia Breck and· Barbara Breck now reside with their maternal aunt, Alice DeCamp, in the city of St. Louis, Missouri; that the testamentary guardian and his successor nominated in the will of Ellen M. Breck are likewise trustees of the estate of the said minors, and, if allowed

to qualify as the guardians of the person and estate, while acting as trustees of the estate, they will be in the anomalous position of accounting with themselves in two separate capacities.

Your petitioner further presents that while the said Lewis B. Tebbetts and Arthur DeCamp were administering the estate of Ellen M. Breck, as the executors thereof, they failed to promptly make their settlements and numerous citations and attachments to settle were issued against them, and administration was commenced on the 10th day of December, 1905, and not completed until the 14th day of December, 1910, without any good reason for the delay.

Wherefore, the premises considered, it has become apparent that the minors above named are without a general guardian; that the testamentary guardian and his successor are not proper persons to likewise act as general guardians by reason of the fact that they are likewise testamentary trustees and are likewise insolvent and it has become necessary that a general guardian of the person and estate of said minors be appointed, and your petitioner prays this honorable court to appoint some suitable solvent person, the guardian of the persons and estates of the minors above named.

One of the three Breck children, Lewis Tebbetts Breck (who is not embraced in the application herein), having in the meantime reached the age of fourteen years, respondent Lloyd H. Rickart, on December 8, 1911, put on foot such proceedings by a so-called amended application, as caused the court to cite Lewis Tebbetts Breck to appear and select a guardian, which the latter did, and respondent Lloyd H. Rickart was appointed as such guardian on December 21, 1911. The contents of this amended application are not necessarily pertinent, beyond the fact that one clause thereof makes this recital, to-wit:

Your informant further presents that the original testamentary guardian, Lewis B. Tebbetts, did not, until long after the probate of the will of Ellen M. Breck, to-wit, sometime in the year 1911, accept said testamentary guardianship in writing, nor has he at any time given bond for the faithful performance of his duties as such testamentary guardian, nor has his successor, Arthur P. DeCamp, in said will nominated, accepted the office of testamentary guardian at any time, nor has he at any time given bond as such, for the faithful performance of the duties of said office.

Following the filing of the amended application of
Lloyd H. Rickart, which prayed that Rebecca Rickart
be appointed guardian of the Breck children, hearings
were had by the probate court from time to time, which
hearings appear to have occupied many days, but the
nature of which investigation, its range and volume,
since we have before us but the bare record, is not dis-
closed. Pending these many hearings, and on January
6, 1912, petitioner Tebbetts filed an amended applica-
tion and acceptance of guardianship, in which he again
not only averred his willingness to accept the nomina-
tion conferred by the will, but averred his willingness
"to give such bond and security as may be required
by the court."

Upon the filing of the amended acceptance above
referred to, the probate court made the following or-
der:

> Now again come Lloyd H. Rickart and Lewis B. Tebbetts,
> the parties herein in person and by their respective attorneys,
> and the said Lewis B. Tebbetts, by leave of court presents an
> amended application for his appointment as testamentary guard-
> ian of the persons and estate of Lewis Tebbetts Breck, Letitia
> Breck and Barbara Breck, minors, and also a written acceptance
> of the testamentary guardianship of said minors in accordance
> with the will of their mother, Ellen M. Breck, deceased, and
> thereupon the trial of this cause progressed, but not being con-
> cluded the same is laid over until the 8th day of January,
> 1912, at ten o'clock a. m

Hearings on the matter proceeded from time to
time, and to quote the record, "the trial progressed,"
till January 4, 1912, when the hearings were finally
concluded and the matter taken by the probate court
under advisement till March 11, 1912, when the follow-
ing order was made by the court:

> Now, at this day, the court being fully advised of and
> concerning the applications of Lloyd H. Rickart, Lewis B.
> Tebbetts and Daniel Breck, for appointment of a guardian of
> the persons of said Lewis Tebbetts Breck, Letitia Breck and
> Barbara Breck, minors, heretofore, to-wit, on the 9th of January,
> 1912, submitted and taken under advisement, doth find that the

petitioner, Lewis B. Tebbetts, did not, in any manner notify this court of his acceptance of the testamentary guardianship of said minors, according to sections 408-409 of the Revised Statutes of Missouri, of 1909, and the provisions of the last will of their mother, Ellen M. Breck, deceased, nor give bond and security as such guardian within six months after the probate of the will of said Ellen M. Breck, in this court, on January 16, 1906, and the court doth further find that by reason thereof, on the 6th day of September, 1911, the time of filing of the original petition for appointment of a guardian, said minors were in law, without a legal guardian, and this court had jurisdiction to hear petitions of the parties herein and their applications for appointment, and had jurisdiction to appoint a guardian for said minors, and it further appearing that said Lewis Tebbetts Breck is a minor over the age of fourteen years and that he has heretofore chosen Rebecca Rickart as guardian of his person; that said Letitia Breck and Barbara Breck are minors, each under the age of fourteen years; that the parents of said minors Robert Breck and Ellen M. Breck are both dead; that the mother was the surviving parent and was at the time of her death, a resident of the city of St. Louis, State of Missouri; that the said Rebecca Rickart is the most suitable person for the guardianship of the persons of said minors and that it would be for the best interest and welfare of said minors that said Rebecca Rickart be appointed guardian of their persons, it is therefore ordered by the court that the petitions of said Lewis B. Tebbetts and Daniel Breck, be and the same are hereby denied, and that the said Rebecca Rickart be and she is hereby appointed guardian of the persons of said Lewis Tebbetts Breck, Letitia Breck and Barbara Breck, minors, and that she give bond, as such guardian, in the sum of five hundred dollars, which bond being now tendered by said Rebecca Rickart, is approved.

As ancillary to and in aid of this proceeding in *habeas corpus,* petitioner, as relator, on the same day at which he here began this suit, began also an action in this court in *certiorari,* which action is No. 17482 on our docket and is styled "State of Missouri ex rel. Lewis B. Tebbetts, Relator, v. Chas. W. Holtcamp, Judge of the Probate Court of the City of St. Louis, and George Brand, Clerk of the Probate Court of the City of St. Louis, Respondents" [*post,* p. 333.], the object of the *certiorari* suit being to bring up to this court the entire record of the probate court of the city of St. Louis having reference to the matter of con-

tested guardianship, so that we may determine the right action and legality *vel non* of such court in the premises, and that we may, if such court exceeded its powers and jurisdiction quash its order and judgment. The two cases were heard together and must for clearness' sake be considered together, for both sides to this suit concede that if the order made by the probate court appointing respondents as guardian of the persons and curator of the estates of the Breck children, and refusing to appoint or confirm as such guardian the relator, is lawful and valid, then the writ issued herein must be quashed and the Breck children remanded to the custody of the respondents.

In the *certiorari* proceeding no return beyond a certification of a full, true and correct transcript of the papers, orders and files of the probate court, was made.

In the matter of the writ of *habeas corpus,* respondent Rebecca Rickart, after admitting custody of the persons of the Breck children and admitting the salient facts and history of the case as we have set them out, pleads *res adjudicata* to all of it, referring for proof thereof to certain orders made by the circuit court of the city of St. Louis in a *habeas corpus* case in that court, as also to a certain proceeding in an action in *certiorari,* had in the circuit court of the city of St. Louis, and on appeal, in the St. Louis Court of Appeals. Of these proceedings and of all of them, respondent Rebecca Rickart attaches to her return full and complete certified copies as exhibits, and they show, if any verity is to be attached to them whatever, that the precise point here involved in the *certiorari* suit, between the identical parties, about the identical "subject-matter," was brought in the circuit court of the city of St. Louis, there decided adversely to the contentions of the petitioner herein (who was relator therein, as he is also relator here in the *certiorari* suit); that he appealed to the St. Louis Court of Ap-

peals where the judgment of the circuit court sustaining in all ways the order and action of the probate court on the decisive point here in issue, was in all things affirmed. [The case in *certiorari* is before us, being reported under the style of State ex rel. Tebbetts v. Holtcamp et al., *post*, p. 333.] This return avers and the appended exhibits of certified copies show, and Tebbetts, as relator in the *certiorari* proceeding admits, that in a *habeas corpus* proceeding brought on behalf of the Breck children by Rebecca Rickart against Tebbetts, petitioner herein and others in the circuit court of the city of St. Louis, respondent Rebecca Rickart was awarded the custody of these children. In that *habeas corpus* proceeding the facts and legal reasons urged by Rebecca Rickart for custody of these children, as well as the facts and legal reasons urged by Rebecca Rickart for custody of these children, as well as the facts and legal reasons urged by petitioner Tebbetts, *contra,* are substantially in all ways, as in the case at bar. The differences, if any, are merely in verbiage.

Respondent Lloyd H. Rickart makes return that he is curator of the estates of the Breck children, and is so acting by virtue of the order of the probate court, quoted herein, so appointing him; that he has personally no custody or restraint over the Breck children, though they are in his house, in the care and custody solely of his wife, respondent also herein, who, he avers, assumes to hold them by virtue of her appointment as the guardian of their persons by the probate court. Just here we may say that although respondent Lloyd H. Rickart has been appointed curator of the estate of the Breck children, no point is made in this whole case on this. The custody, or guardianship, of their persons is all that is in question here; (it may be all that could be questioned here) since petitioner, as the record shows, specifically disclaimed any other purpose or issue, in the probate court.

Petitioner Tebbetts by his reply to respondents' returns, which reply he verifies by his oath, among other things, referring to the pleas of *res adjudicata* set out in the return of Rebecca Rickart, says that he *"denies that the situation of the said minors and of the parties hereto has not changed since the adjudication herein,* and denies that the matters of inquiry in this proceeding *are the same as have heretofore been adjudicated* as in said return set forth." The learned counsel for petitioner on this phase of the case says in his brief:

"Assuming, but not conceding, that the plea of *res adjudicata* made by the respondent in her return is, on the face of the record pleaded by her, a good and sufficient plea, it is apparent that if this court in the *certiorari* proceedings holds the order of Judge Holtcamp to be void, then a different state of facts immediately arises than that upon which the judgment of the circuit court of the city of St. Louis in the *habeas corpus* proceedings there, was predicated."

The contention upon the point of *res adjudicata* thus foreshadowed and the question of right and proper action of the probate court in refusing to permit Tebbetts to qualify as testamentary guardian are the two questions which are to the fore, the one of which in one view, and both of which in any view, are decisive of this case.

The above facts should render comprehensible the opinion subjoined.

I. "It is conceded," says learned counsel for petitioner in his brief, "that if this court finds, after a review of the record of the probate court in the *certiorari* proceeding herein that the order of the probate court appointing a statutory guardian was and is a valid order, the writ of *habeas*

Habeas Corpus:
Certiorari as
Ancillary
Thereto.

*corpus* should be quashed and the Breck minors remanded to the custody of Rebecca Rickart.''

With this view we agree, but it is also true that if for any good and lawful reason we shall find ourselves precluded from an examination of this question as to whether the probate court on this point ruled rightly, the same result to petitioner would inevitably follow.

Rebecca Rickart in her return pleads *res adjudicata* as to the issues herein, as well as to the precise point in issue in the proceeding in *certiorari,* here invoked as ancillary and in aid of this writ, and also in aid, as she avers, of a former writ of *habeas corpus* brought and adjudged in the St. Louis Circuit Court.

Clearly there was neither opportunity in law nor incentive growing out of interest to raise the question of former adjudication in the *certiorari* proceeding. The duty of the judge and the clerk of the probate court was in the premises confined to sending up the record called for by our writ, here to be adjudged as to legality *vel non* by the showing upon the face thereof. [State ex rel. v. Patterson, 229 Mo. 364.] This duty they performed without comment. In a proceeding in aid of *habeas corpus* no other return is called for or can be made. [Ex parte Lange, 18 Wall. (U. S.) 163.] As to whether former adjudication must be pleaded to be a good plea, or whether it may be given in evidence under the general issue, the courts are divided. Our courts in this State by the great weight of authority incline strongly to the latter view that the defense is a matter of evidence.

Return.   [Garton v. Botts, 73 Mo. 274; Connecticut Ins. Co. v. Smith, 117 Mo. 1. c. 297; Offutt v. John, 8 Mo. 120.] But we need not quibble as to this, since the cases are unanimous that when a party has no opportunity to plead his defense of former adjudication he may give it in evidence, under the general issue, and it will be as conclusive as if pleaded. [9 Ency. Pl. & Pr. 618.] Thus stands the case at bar. Re-

spondents were not parties to the proceeding in *certiorari*. They made return to the writ of *habeas corpus* issued herein, raising the points of former adjudication, which question and matter of defense unless it be or has been traversed by reply, will be taken as true and considered by applying the law of the case to it, as to a fact conceded.

At common law as a rule the return to the writ of *habeas corpus* was conclusive as to the facts stated therein and the averments could not be controverted. [9 Ency. Pl. & Pr. 1039.] But the well-recognized and almost universal doctrine now is to the contrary. The averments of the return may be, by reply or similar pleading, traversed or denied (In re Mason, 8 Mich. 70; Ex parte Durbin, 102 Mo. 100); or by pleading in the nature of confession and avoidance, new facts may be set up to avoid the effect of the matter averred in the return. [9 Ency. Pl. & Pr. 1052.] This is so in our own State by statutory enactment. [Sec. 2468, R. S. 1909.] When an issue is made by a denial, or traverse by reply to the facts averred in the return, the matter stands then like any other issue to be adjudged and determined by the evidence upon a trial, or hearing had. [Speer v. Davis, 38 Ind. 271.] If the averments of the return are not denied or contradicted by some appropriate pleading, the facts set out in the return are to be taken as true, regardless of the allegations pleaded in the petition. [Ex parte Durbin, 102 Mo. 100; Ex parte Bryan, 76 Mo. 253.] The issue then becomes one of law simply which must be tried upon the case made, and no fact *dehors* the record will be considered. [9 Ency. Pl. & Pr., 1052.] We do not understand that petitioner by his reply to the return has denied the fact of former adjudication, but to the allegation in the return that the "situation of the parties has not changed" since the alleged adjudication, petitioner "denies that it has not changed," thus negatively, in a sense, averring that such situa-

tion has changed, but in no sense denying the fact of adjudication, but merely the identity thereof. He also in substance avers that certain matters were adjudicated, but that they were not the same matters which are before us. It would seem as to a situation or condition the existence of which at a time is admitted, the burden is upon him who asserts a change to prove such change. That upon the question of identity of adjudication the fact or existence of an adjudication being pleaded, and in effect admitted, we may in the absence of any proof, both records and the reported case being before us, determine by inspection where the truth is. To these views we are partially induced and persuasively drawn by the presumption of identity of person arising from identity of name (State v. McGuire, 87 Mo. 642; Geer v. Lumber Co., 134 Mo. 85); and from the presumption of the continuance to exist of a fact once shown to exist (life and other well-known self-limited ephemeral phenomena, being excluded). [2 Chamberlayne, Mod. Law of Ev. 1030; Viertel v. Viertel, 212 Mo. l. c. 570.]

To one deprived of his liberty there is no limit by *res adjudicata,* or by any other doctrine, to the number of applications which he may make for release by the writ of *habeas corpus,* except the **Habeas Corpus:** bare statutory one (Sec. 2442, R. S. **Res Adjudicata.** 1909) that successive applications must not be made to courts of inferior jurisdiction. [In re Clark, 208 Mo. l. c. 142; Weir v. Marley, 99 Mo. l. c. 488; Ex parte Jilz, 64 Mo. 205.] But when liberty, or the desired status in contest, has been once attained, then the doctrine of former adjudication applies and is conclusive till the condition or situation of the person or persons whose liberty or status is in question has changed. [In re Clark, 208 Mo. l. c. 142; Weir v. Marley, 99 Mo. l. c. 488; Ex parte Jilz, 64 Mo. 205; Cormack v. Marshall, 211 Ill. 519.]

In the case of Weir v. Marley, supra, 1. c. 489, the rule above suggested is well stated by Brace, J., who, further proceeding, says that the rule applies in a case such as the instant one where the custody of infants is the bone of contention, as note his words:

"From these cases may be deduced the doctrine that the principle of *res adjudicata* does not apply in cases of *habeas corpus* to judgments remanding the prisoner, or to judgments discharging the prisoner, where a new state of facts, warranting his restraint, is shown to exist different from that which existed at the time the first judgment was rendered. That it does apply to a judgment discharging the prisoner, where no such new state of facts is shown, may as readily be deduced from the case Ex parte Jilz, 64 Mo. 205. The distinction thus made between judgments remanding, and those discharging the prisoner, grows out of the nature of the writ whose *raison d'etre* is the protection of personal liberty.

"It loses none of its characteristics when used for the purposes of obtaining the custody of children, and the same analogies ought to obtain in such cases as when used simply for the purpose of discharging a prisoner from illegal restraint. If this be so, then the judgment of a court or officer of competent jurisdiction, discharging the infant in this case from the custody of the petitioners on the ninth day of September, 1889, on writ of *habeas corpus,* ought to be a complete answer to their petition, presented on the same day to another court or officer of like jurisdiction, for a like writ to recover that custody from the same person to whom it was awarded, setting out the same grounds for such recovery in their petition as was set up in their return to the former writ—and this conclusion would not be inconsistent with the actual rulings in the cases cited from this State, or the nature of the writ, and would be sustained by authority elsewhere. [Mer-

cein v. People, 25 Wendell, 64; People v. Mercein, 3 Hill, 399; People ex rel. Lawrence v. John R. Brady et al., 56 N. Y. 182; Com. v. McBride, 2 Brewster, 545; In re Da Costa, 1 Parker's Crim. Cases, 129; Brooke v. Logan, 112 Ind. 183; Spalding v. People, 7 Hill, 301; People v. Burtnett, 5 Parker's Crim. Cases, 113; Mc-Conologue's Case, 107 Mass. 154; Freeman on Judgments (3 Ed.), sec. 324; Church on Habeas Corpus, secs. 386 and 387.]''

Upon the facts as we have with care and much pains set them out, it is clear that neither the status of the Breck children themselves nor that of petitioner Tebbetts, nor of Rebecca Rickart has changed. An inspection of the record and a comparison of the two records disclose this clearly. But we need not critically weigh whether this be true. The learned counsel for petitioner concedes it with commendable frankness, unless upon a re-examination of the record in the ancillary suit in *certiorari,* we should find that the probate court was in error in refusing to permit petitioner to qualify as testamentary guardian of the Breck children and in appointing Rebecca Rickart as guardian of their persons. The point then being whether the status of the Breck children has changed since the last adjudication of that precise question, and this point being conclusively determined by the further point of whether the probate court properly held it, we are of necessity brought again to examine the validity of the probate court's record as brought to us by *certiorari.* Not only to rule the point must we again examine it, but in addition we must hold that the conclusion reached by the probate court was wrong. Reserving the latter point and laying it out of the case for future discussion, let us see whether we can reach it upon the record here to rule it at all. The record before us, as well as the printed report of the case of ''State ex rel. Tebbetts v. Holtcamp et al.,'' shows that the precise point was brought by the relator in the *certiorari*

case (here being considered with this instant case of *habeas corpus*) before the circuit court of the city of St. Louis; that it was there ruled against relator; that he appealed to the St. Louis Court of Appeals where the judgment of the circuit court was affirmed. [State ex rel. Tebbetts v. Holtcamp et al., 168 Mo. App. 402.] In that action, as in the *certiorari* branch of this case, here, it was sought to have the circuit court quash and annul the action of the probate court in this identical proceeding. The circuit court refused to do so; an appeal was taken and the St. Louis Court of Appeals likewise refused to order the probate court's action to be quashed. The same final result or judgment was sought in the same sort of proceeding about the same matter and between the same parties. The *certiorari* suit brought in the circuit court ended in the Court of Appeals. A new original proceeding in *certiorari* to quash the•order of the probate court was commenced here. The relief prayed for in the action in the circuit court was that the circuit court ''determine the legality of all proceedings made in said cause in said probate court.'' Here, we are asked in the *certiorari* case to ''determine after being thereunto duly advised, whether the said judge of the probate court acted within his jurisdiction in appointing said Rebecca Rickart as statutory guardian.'' Both results sought, then, it will be seen, are identical in effect in their last analysis.

The circuit court had jurisdiction to examine into and determine the legality of the action of the probate court. [Sec. 23, art. 6, Constitution; St. Louis Co. Ct. v. Sparks, 10 Mo. 117; Carter v. Exposition Co., 124 Mo. App. 530.] *Certiorari* cannot be used in ordinary cases as a substitute for an appeal or a writ of error (State ex rel. v. Reynolds, 190 Mo. 578; Fry v. Armstrong, 109 Mo. App. 482), though it will lie to bring up a record, where no appeal or writ of error lies. [In re Clark, 208 Mo. 121.] Having such jurisdiction we

are not able to see why its action when subsequently affirmed by the Court of Appeals is not conclusive on petitioner and relator here. [Fiene v. Kirchoff, 176 Mo. l. c. 525; Hope v. Blair, 105 Mo. l. c. 93; 23 Cyc. 1215.] The general rule may be thus stated:

"A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action." [23 Cyc., 1215.]

"A former judgment between the same parties is a bar to the maintenance of the second action only when the causes of action in the two suits are identical. But it will be conclusive and final as to any issue litigated and determined in the former suit, and coming again in question in the second suit, although the latter is brought upon an entirely different cause of action." [23 Cyc. 1216, citing Harlow v. Bartlett, 170 Mass. 584; Lindsey v. Danville, 46 Vt. 144; Spencer v. Dearth, 43 Vt. 98.]

Coming down to the very point in issue a well-known text-writer thus states the rule:

"The appointment or removal of a guardian or administrator, or the adjudication of a question of descent or pedigree, is conclusive, not only in the proceeding in which they may take place, but in every other in which the same matter is agitated. The manner in which the question is actually brought before the court is immaterial, as long as it is actually decided; whether the action of the court is formal or summary on motion makes no difference in the conclusiveness of the judgment if, as it is presumed, until it is otherwise proven, there was an opportunity

to appear and contest the case on its merits; and hence, an adjudication under a rule to show cause will preclude a renewal of the controversy at law, or even an application for relief in equity.'' [Herman on Estoppel, p. 136.]

Our own court speaking generally of this doctrine, in the case of Hope v. Blair, 105 Mo. 1 .c. 93, said:

''When the court has cognizance of the controversy, as it appears from the pleadings, and has the parties before it, then the judgment or order, which is authorized by the pleadings, however erroneous, irregular or informal it may be, is valid until set aside or reversed upon appeal or writ of error. This doctrine is founded upon reason and the 'soundest principles of public policy.' 'It is one,' says the court of Virginia, 'which has been adopted in the interest of the peace of society, and the permanent security of titles. If, after the rendition of a judgment by a court of competent jurisdiction, and after the period has elapsed when it becomes irreversible for error, another court may in another suit inquire into the irregularities or errors in such judgment, there would be no end to litigation and no fixed established rights.' · [Lancaster v. Wilson, 27 Gratt. 624; see, also, Adams v. Cowles, 95 Mo. 506; Rosenheim v. Hartsock, 90 Mo. 365; Morris v. Gentry, 89 N. C. 248; Porter v. Gile, 47 Vt. 620; Paul v. Smith, 82 Ky. 451; 1 Black on Judg., sec. 245.]''

In a later case (Fiene v. Kirchoff, supra) MARSHALL, J., quoting with approval from 21 Am. & Eng. Ency. Law, 134, thus states the applicability and continuance of the rule:

'' 'The doctrine of *res adjudicata* applies so long as the issue is between the same parties, and whether they continue, respectively, as plaintiffs' and defendants, or reverse their positions, is not material. They must, however, have been and continue to be adversary parties. But when issues between various de-

fendants are actually decided by the court they become *res adjudicata,* the same as if they arose between opposing parties.' [21 Am. & Eng. Ency. of Law (1 Ed.), p. 134.]"

By the Constitution the Supreme Court is given "a general superintending control over all inferior courts," with power to "issue writs of . . . *certiorari* and other original remedial writs, and to hear and determine the same." [Constitution of Missouri, sec. 3, art. 6.] Likewise by the Constitution circuit courts are empowered to "exercise a superintending control over criminal courts, probate courts . . . and all inferior tribunals in each county in their respective circuits." [Constitution of Missouri, sec. 23, art. 6; Owens v. Andrew County Court, 49 Mo. 375; State ex rel. v. Walbridge, 116 Mo. 656; State ex rel. v. County Court, 64 Mo. 170.] So far as this superintending control is directed by the circuit court toward a court having jurisdiction inferior to such circuit court, the jurisdiction of the latter court in such case is concurrent with that of the Supreme Court. That in a proper case our jurisdiction as to the same action may also be appellate, does not militate against this view. The tendency of the ruling of the Supreme Court has been in such cases to compel resort to the circuit court "until a case of far more than ordinary magnitude and importance induces a departure from our general rule." [State ex rel. v. County Court, 64 Mo. 170.]

Petitioner saw fit to invoke the superintending control of the circuit court—a court having full and ample power to examine into and to determine the legality of the action of the probate court of the city of St. Louis, in the matter now before us, i. e., as to whether the probate court acted legally in refusing to confirm Tebbetts as testamentary guardian and in appointing Rebecca Rickart as statutory guardian—being cast, he appealed to the St. Louis Court of Ap-

peals, a forum also having jurisdiction, where again the holding is adverse to him on the point involved. May he again raise it here in an original proceeding, not in review of the action of the circuit court, or of the St. Louis Court of Appeals? We think not. We may not by any original process allowed by law or by the Constitution, by which we exercise the Constitution-conferred power of superintending control, make an inferior court adjudge cases as we might adjudge them, when it stays within its jurisdiction, and where we have not passed on the point. Courts inferior to this have the inherent, if not the Heaven-born power to make errors in judgment and discretion. [State ex rel. Brown v. Broaddus, 216 Mo. 336.] These errors we can correct only by appeal or by writ of error; we cannot if we have not blazed the way and they have refused to follow, control them by mandamus, *certiorari* or prohibition, when they are lawfully pursuing their jurisdiction. The point has been ruled by this court in the case of State ex rel. v. Walbridge, 123 Mo. l. c. 532, by MACFARLANE, J., in which he says:

"Whatever may be the power of the superior court, according to the rules of the common law, to keep its hand upon those over which it has supervisory control, and guide them in each of their rulings in the progress of the cause, this court has ever refused, by writs of mandamus, prohibition or *certiorari,* to exercise it; but, when the court or tribunal has jurisdiction to proceed correctly, the right to commit errors, and the opportunity to make corrections themselves has never been denied. [State ex rel. v. Court of Appeals, 99 Mo. 221; State ex rel. v. Burckhartt, 87 Mo. 533; State ex rel. v. Smith, 104 Mo. 419; State ex rel. v. Withrow, 108 Mo. 1; State ex rel. v. Edwards, 104 Mo. 125.]

"The circuit courts of the State are, under the Constitution and laws of the State, possessed of original common law jurisdiction, and have inherent au-

thority, in all proper cases, to issue the writ of *certiorari*. This authority has ever been recognized, and, so far as we find, has never been questioned. [State ex rel. v. Dowling, 50 Mo. 134; State ex rel. v. City of Kansas, 89 Mo. 37; Owens v. Andrew Co., 49 Mo. 375; State ex rel. v. Walbridge, 116 Mo. 656.]''

We conclude that the fact of former adjudication by a court of competent jurisdiction precludes us from again examining these questions, both in the instant case and upon the *certiorari* case ancillary hereto. [State v. Water Commissioners of Jersey City, 30 N. J. L. 247; State v. Rich, 58 N. J. L. 507; Broder v. Mono County Court, 33 Pac. 630; Olcese v. Justice's Court, 156 Cal. 82; Sampson v. Commissioners, 115 Ill. App. 443.]

II.   This conclusion renders unnecessary the expression of any opinion upon the question of the correctness of the action of the probate court in refusing to permit petitioner Tebbetts to qualify as testamentary guardian. But in passing, since the point urged is of some importance, we may well look at the law on the point and the facts, and see who hath the right of it. The statute, the meaning of which is in dispute, reads thus:

Testamentary Guardian.

''Sec. 409.   If any testamentary guardian shall fail to notify the probate court, or judge thereof in vacation, of its acceptance of the guardianship, and give bond and security within six months after the probate of the will, the court, or judge in vacation, may appoint a guardian, as if no appointment had been made by the testator.''

The cold question, stripped of all extrinsic defenses is:   Whether the failure of one nominated as testamentary guardian to ''notify the probate court of his acceptance within six months,'' *ipso facto* voids the testamentary appointment and leaves the minors

as wards of the court, to be disposed of by the court *sua sponte,* even though such testamentary nominee becomes by his acts the *de facto* guardian of their per-sons and property.

The facts in this case show that the petitioner Teb-betts took the Breck children into his care and custody following the death of their mother and at once, upon his nomination by her will as their testamentary guard-ian; that he expended over six thousand six hundred dollars of their money; that he cared for them con-tinuously till they were taken from his custody by a writ of *habeas corpus,* issued on the 12th day of March, 1912, and finally decided adverse to his contentions on the 24th day of February, 1913. So, without notifying the probate court of his acceptance, and without filing bond and security within six months of the probate of the will, Tebbetts took upon himself all of the duties, care and custody of an actual guardian of the Breck children, and so acted as such guardian *de facto* from January 16, 1905, till September 6, 1911, at which time he filed in vacation with the probate judge the writ-ten acceptance set out in the statement, and prayed that he be appointed guardian of the persons of said minors. Thirty minutes thereafter Lloyd H. Rickart, one of the respondents herein, filed his application to have a guardian appointed. No appointment of any person as such guardian was made till February 3, 1912, when in vacation of the probate court, after the lengthy hearing above referred to, Lloyd H. Rickart was appointed curator of their estates, and on March 11, 1912, Rebecca Rickart was appointed guardian of their persons by the said court.

When no act *in pais* is done by the testamentary guardian nominated by the will, evidencing acceptance of the guardianship, then clearly the welfare of the child, the necessity of housing, clothing, feeding and caring for him, requires that the section of the statute under discussion should be construed as mandatory.

Ordinarily the conservation of the property of a minor would require that a strict construction of this statutory requirement be had, because, even if the infant be housed, clothed, fed and schooled, his property ought to be looked after and preserved by some one answerable to a court of competent jurisdiction by a good and sufficient security for the safety of such property.

· The guardianship sought to be conferred here being conferred by general words was a general guardianship, i. e., both a guardianship of the persons and a curatorship of the estates of the Breck children. [In re Grimes, 79 Mo. App. 274.] Petitioner, acting in a sense as guardian by his own wrong, spent more than six thousand dollars of the money of these minors without giving bond for it, and without accounting in anywise to any court for the manner of its disbursement. Whether he spent this money wisely or unwisely, honestly for their sole behoof, or otherwise, we do not know and obviously can never know, neither can the probate court know, nor can the probate court enforce against any bond known to the law given or to be given, any penalty for an unwise or a dishonest spending. The wisdom of the lawmakers may have led them to enact this provision in order to prevent this condition, as well as for the reasons we have just pointed out; the one looking to the personal and bodily welfare of the minor, and the other toward the safety and conservation of his property. Surely six months is long enough for an infant, perhaps of tender years, to subsist without some one standing toward him *in loco parentis*, having him under care and protection, and it is long enough time to permit the property of a minor to be handled by one, perhaps insolvent, and not answerable to a superintending court of competent jurisdiction, by a solvent bond for the safe-keeping thereof. Likewise, it is long enough to let the minor's property lie wholly without care. To convict

the probate court of error in the case at bar, simply because the instant case is in a sense *sui generis,* and because being so, there are strong pleading equities excusing Tebbett's delay, and because it may be that no one was hurt by this delay, would make necessary the enunciation of a general rule, which, for the reasons we point out, would not fail to work hardships either upon the person or the property of a minor. When a delay beyond six months in complying with the provisions of said section 409 has occurred, we think the matter of appointing a guardian should be relegated to the sound discretion of the probate court. That the wishes of the testator should be strongly persuasive, we feel no doubt; that the court should give preference in appointing to the nominee in the will (other things being equal, absent recalcitration on the guardian's part, and absent harm and neglect of the person, or property of the minor), we concede; but for the neglect of the testamentary guardian to comply with the law, he should be penalized by being compelled to stand in the discretion of the court upon an equality with others. We ought not to lay hands of violence upon this statute, when we consider the ills that might flow to the person of an infant, or to his property by holding that it is directory merely. We hold that it is so far mandatory, as that when a nominee in a will as testamentary guardian fails for six months to accept as provided in said section, we will not interfere with the exercise by the probate court of its sound discretion in appointing another and different person as guardian.

So viewing the many strong reasons in favor of a general rule of strict construction of this statute and the paucity or entire lack of argument against such rule when based upon the *welfare of the wards' view,* which the courts have said is the guiding-star to light their path (West v. West, 94 Mo. App. 683; Campbell v. Campbell, 76 Mo. App. 396; Lusk v. Lusk, 28 Mo.

91), it is beside the question and performs no good office to say that, if the matter had come to us shorn of its manifold complications of former adjudication as to all questions in issue, we might for the sake of the many appealing equities have ruled otherwise.

For the reasons set out herein the writ of *habeas corpus* should be quashed and Letitia Todd Breck and Barbara Breck should be remanded to the custody of Rebecca Rickart; and it is so ordered. *Brown, Bond and Walker, JJ.*, concur; *Graves, J.*, concurs in separate opinion in which *Lamm, C. J.*, and *Woodson, J.*, concur.

## SEPARATE OPINION.

GRAVES, J.—I am forced by the reasoning of my brother to concur in the first paragraph of the opinion, and therefore in the result. I do not concur in the second paragraph, but this is of no avail to relator here, and a discussion of the statute pertaining to testamentary guardians is really to no purpose in the case.

**Res Adjudicata: Testamentary Guardian.**

In my judgment when the testamentary guardian filed his acceptance of the trust with the probate court prior to any action having been taken to invoke the jurisdiction of the court in the appointment of another and different guardian, such act deprived the court of any jurisdiction further than to fix a bond for the testamentary guardian and thereafter see that the trust imposed by the will was carried out. In other words, I am of opinion that both the circuit court and the St. Louis Court of Appeals were in error in not quashing the record of the probate court. However, I leave a discussion of the question to a case where the point becomes a live issue. *Lamm, C. J.*, and *Woodson, J.*, concur in these views.