## WILLIAM MOULTHROP
### vs.
## RALPH H. WALKER

Superior Court          Hartford County          File No. 68255

MEMORANDUM FILED NOVEMBER 4, 1942.

*William Moulthrop, pro se,* for the Plaintiff.

*Otto Saur,* Assistant State's Attorney, for the Defendant.

Memorandum of decision in habeas corpus action.

O'SULLIVAN, J. On September 16, 1942, this court, on the sworn application of the plaintiff, caused to be issued a writ of habeas corpus. The defendant filed his return alleging that, as warden of the Connecticut State Prison, he held Moulthrop in custody by virtue of a mittimus predicated on a judgment of the Superior Court entered on January 19, 1932. To this, the plaintiff filed a "pleading" which, though extreme-ly informal, will be treated as one properly raising his griev-ances. The defendant replied to this so-called pleading by admitting certain allegations and denying others and by adding special matter alleging *res judicata*. This affirmative matter has not been denied but it will be examined as though it were.

These are the facts: On January 19, 1932, Moulthrop was sentenced by the Superior Court to imprisonment in the State Prison for not less than two nor more than four years on one count of an information, and for two years on each of four other counts, the sentences to run consecutively. By virtue of a mittimus thereafter issued, the defendant received Moul-throp at the prison and there held him in custody until June 8, 1937, when he was released on parole. At that time he had served five years, four months and nineteen days during which he had earned, as the result of his behavior, 470 days of good time. While on parole, he earned an additional 270 days. On June 8, 1940, having violated his parole, he was ordered back to prison. Two days later he was returned and has ever since then been in confinement. On July 3, 1940, the Board of Parole, upon the report of the warden, ordered forfeited 730 of the 740 days of good time standing to his credit. Since his return, he has earned $7\frac{1}{2}$ days each month. If his earned time had not been forfeited, he would be entitled to his discharge.

There are two legal problems to be considered. The first presents the question whether the doctrine of *res judicata* pre-cludes the plaintiff from further pressing his claim of illegal confinement. It appears that on February 25, 1941, upon Moulthrop's application, this court issued a writ of habeas corpus and the merit of his claim was heard on an agreed state of facts identical with the facts of the instant case. (File No. 64801; Hartford County, Superior Court.) Judgment was entered for the defendant, the file reciting that "the court having heard the parties on an agreed statement of facts and

having fully inquired into the cause of said imprisonment, finds the issues for the defendant." Within two weeks after judgment entered, Moulthrop sued out another writ of habeas corpus, and upon a similar set of facts as those found in the prior case, it was ordered that he be released for reasons set forth in an opinion of the Supreme Court of Errors, to which the defendant later appealed. *Moulthrop vs. Walker,* 129 Conn. 164. Error was found, and the case was remanded with directions to dismiss the writ.

There is now before the court a third writ and quite naturally the query arises as to whether or not *res judicata* is applicable.

"It is an established rule in the administration of justice that all controversies between parties once litigated and fully and impartially determined shall cease." *Sargent & Co. vs. New Haven Steamboat Co.,* 65 Conn. 116, 126, quoting from *Munson vs. Munson,* 30 Conn. 425, 433. However, a different rule seems to prevail where writs of habeas corpus are involved. At common law the doctrine does not extend to decisions refusing to discharge a prisoner. *State ex rel. Shapiro vs. Wall,* 187 Minn. 246, 244 N.W. 811. The state courts generally have accepted this rule when not modified by statute. *In re Breck,* 252 Mo. 302, 158 S.W. 843; *Knapp vs. Tolan,* 26 N.D. 23, 142 N.W. 915; *Miskimmins vs. Shaver,* 8 Wyo. 392, 58 Pac. 411. This rule, it might be added, is applicable only when the writ is one for liberty as distinguished from those cases where the custody of children is involved.

Consequently, even on the assumption that the claim of the prisoner has previously been passed upon, it is no bar to the present action. His claim, as I understand it, is that the Board of Parole could not order the forfeiture of his good time because the statute in force at the time of his conviction provided for a forfeiture of earned time only for a "serious act of insubordination or persistent refusal to conform to prison regulations *occurring at any time during his confinement in said prison."* (Italics added, Supp. [1931] §329a [Cum. Supp. (1935) §783c].) He then points out that whatever infraction he was guilty of occurred, not while he was confined in prison, but while he was at liberty under parole.

This argument appears to have been answered already. "These provisions for diminution of sentence by good time

earned became incidents to the sentence imposed upon the plaintiff. They gave him a right to earn a diminution of his sentence but conditioned that right by providing that it might be forfeited by certain misconduct or by violation of his parole resulting in an order for his return to the prison, if, as provided in §1471e [Supp. (1937) §869d], the warden and board of directors should determine that there should be such a forfeiture. If a prisoner or parolee commits an act resulting in a forfeiture of good time earned, in accordance with the provisions of the statutes, his right to a deminution of the sentence is destroyed." *Moulthrop vs. Walker, supra,* p. 167.

This excerpt from the opinion of the appellate court is based, I take it, on our conception of the character of the right to earn good time which a prisoner enjoys. While it is referred to as a right, it is not vested, but partakes of the nature of one of favor or grace. *Anno.* 127 A.L.R. 1203. Being a matter of privilege and not of unforfeitable right, statutes passed subsequent to sentence which affect the retention of earned time are not obnoxious as being in contravention of constitutional provisions. We are not here concerned with a statute which cancels earned time, but with one which provides that the future conduct of a prisoner may furnish ground for a forfeiture.

It so happened that not until Moulthrop was placed on parole did the Legislature pass section 869d of the 1937 Supplement to the General Statutes. This statute reads: "Any paroled convict who has been or shall be returned to said prison for violation of his parole may be retained in said prison for a period equal to the unexpired portion of the term of his sentence at the date of the request or order for his return less any commutation or diminution of his sentence earned except as the warden and board of directors may, in their discretion, determine that he shall forfeit any or all of such earned time. ....Each prisoner or paroled convict....shall be subject to loss of all or any portion of time earned if he shall commit any serious act of insubordination or persistent refusal to conform to prison or parole regulations either at any time during his confinement or at any time during the full term of his parole."

As the privilege of earning good time was an incident to Moulthrop's sentence, just so were the provisions of existing

statutes and those subsequently enacted incidents of his parole, at least in so far as they did not arbitrarily destroy good time previously earned but were to become effective only upon his future conduct while on parole.

By way of illustration, it might be observed that if the Legislature, after Moulthrop's parole began, provided for a greater measure of earned time than that established by law at the beginning of his parole, he would, it seems to me, be entitled to the additional advantage afforded by the new legis-lation and undoubtedly he would be the first to claim so.

Therefore, section 869d became an incident of his parole and acting under its provisions, the board was entitled to take the action it did.

The writ is dismissed and the plaintiff is remanded to the custody of the defendant.